Buddy James SMITH, Appellant,

v.

GENERAL MOTORS CORPORATION, and Royal Oaks Chevrolet–Cadillac, Inc., Appellees.

No. 1997–CA–002295–MR.

Court of Appeals of Kentucky.

Oct. 16, 1998.

Thomas L. Osborne, C. Thomas Miller, Paducah, for Appellant.

Donald Craig York, Louisville, for Appellee/GM.

John C. Whitfield, Madisonville, for Appellee/Royal Oaks Chevrolet.

Before HUDDLESTON, KNOPF, and MILLER, JJ.

### OPINION

MILLER, Judge.

Buddy James Smith brings this appeal from a summary judgment (Ky. R. Civ. Proc.(CR) 56) of the McCracken Circuit Court entered April 24, 1997. We reverse and remand.

On or about December 15, 1994, Buddy James Smith (Smith) purchased a new GMC van from co-appellee, Royal Oaks Chevrolet–Cadillac, Inc. (Royal Oaks), in Paducah, Kentucky. His employer paid for the vehicle as a retirement gift. During the first 4,800 miles, the van "stalled" three times on interstate roads while traveling at highway speed. In June, 1995, Smith took the van to Royal Oaks complaining of the stalling incidents. Royal Oaks examined the vehicle and was unable to find a defect. Smith was advised to keep driving the van. About one month later, he complained to co-appellee, General

Motors Corporation (General Motors). He requested both Royal Oaks and General Motors to sign statements that the vehicle was safe for use. Each declined. Being unsatisfied with these responses, Smith returned the van to Royal Oaks.

On November 7, 1995, Smith filed suit against Royal Oaks and General Motors, alleging breach of warranty under the sales provision of our Uniform Commercial Code (UCC)(codified in Ky.Rev.Stat. (KRS) 355.2–101—355.2–725) and violation of our Consumer Protection Act (codified in KRS 367.110 – 367.360). In the course of discovery, Smith learned that Royal Oaks had made pre-sale repairs to the van. In March 1994, some nine months before Smith acquired the van, repairs were made to the radiator. At the time, the odometer reading was eight miles. In August of the same year, the van was serviced for engine performance problems, which included "[dying] at highway speeds." [1] At this time, the odometer reading was forty-five miles. These repairs totaled $323.33. Royal Oaks did not advise Smith of the vehicle's service history prior to his taking possession of same. Upon learning said history, Smith amended his complaint to allege fraud. On April 24, 1997, the McCracken Circuit Court entered summary judgment dismissing Smith's complaint in its entirety. This appeal followed.

Certain facts are not in dispute. The van was sold as a new vehicle by Royal Oaks, GM's franchised dealer. As such, it was accompanied by the General Motors' new vehicle warranty and, likewise, afforded all protection of the law relative to the sale of new vehicles.

### FRAUD CLAIM AGAINST ROYAL OAKS

Smith contends that the circuit court committed reversible error by entering summary judgment upon his claim of fraud. We agree. On this claim, we are of the opinion that Smith established sufficient facts to preclude summary judgment as to Royal Oaks' failure to disclose the van's pre-sale history.[2]

Summary judgment is proper only when there exists no material issue of fact and movant is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991). To establish an actionable case of fraud based upon suppression of a fact, Smith must demonstrate (1) that Royal Oaks had a duty to disclose a material fact, (2) that Royal Oaks failed to disclose same, (3) that Royal Oaks' failure to disclose the material fact induced him to act, and (4) that he suffered actual damages therefrom. *See Faulkner Drilling Company, Inc. v. Gross,* Ky.App., 943 S.W.2d 634 (1997), and *Wahba v. Don Corlett Motors, Inc.,* Ky.App., 573 S.W.2d 357 (1978). Royal Oaks asserts, however, there existed no duty upon it to disclose the pre-sale history of the van.

It is, of course, well established that mere silence is not fraudulent absent a duty to disclose. *Hall v. Carter,* Ky., 324 S.W.2d 410 (1959). A duty to disclose may arise from a fiduciary relationship, from a partial disclosure of information, or from particular circumstances such as where one party to a contract has superior knowledge and is relied upon to disclose same. *See Bryant v. Troutman,* Ky., 287 S.W.2d 918 (1956); *Dennis v. Thomson,* 240 Ky. 727, 43 S.W.2d 18 (1931); and *Faulkner,* 943 S.W.2d at 634. Considering Royal Oaks' superior knowledge and Smith's reliance thereupon, we are of the opinion there arose, as a matter of law, a duty upon Royal Oaks to disclose **material defects** and **repairs** known to it. We believe issues of fact exist as to whether the van's pre-sale history of repairs and defects would be considered material to a reasonable person. *See Faulkner,* 943 S.W.2d at 634. We therefore conclude that material issues of fact exist as to Smith's common law fraud claim, thus precluding summary judgment.

We additionally think statutory provisions exist that imposed upon Royal Oaks a duty to disclose the van's pre-sale history. One such statute is KRS 190.071(1)(e), set

---

1. During discovery, it was learned that other General Motor's vans had experienced stalling problems.

2. At oral argument, Smith informed the Court that the fraud claim would be directed only against Royal Oaks.

forth in KRS Chapter 190, "Motor Vehicle Sales." KRS 190.071(1)(e) reads as follows:

(1) It shall be a violation of this section for any new motor vehicle dealer:

. . .

(e) **To use false or fraudulent representations in connection with the operation of the new motor vehicle dealership.** (Emphasis added.)

"Fraud," in the above context, is defined in KRS 190.010(23) as

"**a misrepresentation in any manner,** whether intentionally false or due to gross negligence, of a material fact; a promise or representation not made in good faith; or **an intentional failure to disclose material fact.**" (Emphases added.)

Considering this definition of fraud, we believe KRS 190.071(1)(e) imposes an affirmative duty upon new motor vehicle dealers to disclose material facts to customers while in the course of conducting business. We further believe that failure to so inform the customers may constitute fraud. We are buttressed in our interpretation of same by KRS 190.015 wherein the Legislature declared its public policy underlying Chapter 190:

190.015. Public policy declared.

The Legislature finds and declares that the distribution and sale of vehicles within this state vitally affects the general economy of the state and the public interest and the public welfare, and that in order to promote the public interest and public welfare, . . . it is necessary to regulate and license vehicle manufacturers, distributors . . . distributor representatives, and to regulate and license dealers of vehicles doing business in this state, in order **to prevent frauds, impositions, and other abuses upon its citizens** . . . . (Emphasis added.)

Upon the forgoing, we are of the opinion that KRS 190.071(1)(e) imposed upon Royal Oaks a duty to disclose such material pre-sale repairs and defects known to it and that issues of fact exist as to whether the van's pre-sale repairs and defects were material. *See Faulkner,* 943 S.W.2d at 634.

■ We are also persuaded by Smith's argument that KRS 186A.540 imposed an affirmative duty upon Royal Oaks to disclose repairs exceeding $300.00. That statute is found in the "Damaged Motor Vehicles" Act (KRS 186A.500–550) and states as follows:

An individual or a dealer required to be licensed pursuant to KRS Chapter 190 shall disclose *all damages* to a motor vehicle which result in repairs or repair estimates that exceed three hundred dollars ($300) and that occur while the motor vehicle is in his possession and prior to delivery to a purchaser. Disclosure shall be in writing and shall require the purchaser's signature acknowledging the disclosure of damages. (Emphasis added.)

Royal Oaks urges this Court to adopt a narrow interpretation of the above statute so that it includes only "body" damage to motor vehicles. We decline to do so. We believe said statute should be broadly interpreted to include any motor vehicle repairs over $300.00, be they mechanical, body, or otherwise. We view such broad interpretation as mandated by the legislative purpose of the "Damaged Motor Vehicles" Act:

186A.500. Legislative finding.

The General Assembly finds that purchasers when buying vehicles are entitled **to know if the vehicle has sustained prior severe damage** . . . . (Emphasis added.)

As the van's cumulative repair work exceeded $300.00, we think KRS 186A.540 imposed a duty upon Royal Oaks to disclose the repairs.

In sum, we are persuaded there existed both a common law and statutory basis for imposition of a duty upon Royal Oaks to disclose material pre-sale repairs and defects of the van and that issues of fact exist to preclude summary judgment thereupon.

### CONSUMER PROTECTION CLAIM AGAINST ROYAL OAKS AND GENERAL MOTORS

■ Upon the aforementioned grounds, we likewise perceive that Smith should not have suffered summary judgment upon his claim that failure to disclose the van's pre-sale history constituted a false, misleading and/or deceptive trade practice under the Consumer Protection Act. KRS 367.170. *Cf.*

*Ford Motor Company v. Mayes,* Ky.App., 575 S.W.2d 480 (1978)(holding that Ford Motor Company's failure to repair or replace a defective vehicle constituted an unfair trade practice under the Consumer Protection Act). We believe this claim should proceed against both Royal Oaks and General Motors. We note that "false", "misleading", and "deceptive" are defined in terms generally understood and perceived by the public. *Cf. Dare To Be Great, Inc. v. Commonwealth,* Ky., 511 S.W.2d 224 (1974). Certainly, a fact-finder might reasonably conclude that the sale of the van as "new" without disclosure of its pre-sale history constituted a false, misleading or deceptive act. Thus, we believe summary judgment upon this issue was improper.

### BREACH OF WARRANTY CLAIM AGAINST ROYAL OAKS AND GENERAL MOTORS

We now turn to the consideration of Smith's breach of warranty claim against Royal Oaks and General Motors. KRS 355.2–314(1), a provision of our UCC, implies a warranty of merchantability in all contracts of sale. If goods are defective, they may, of course, be rejected. KRS 355.2–602. If a defect is not discovered until after acceptance, however, a revocation of the acceptance may be effected, and the buyer may have "the same rights and duties with regard to the goods . . . as if he had rejected them." KRS 355.2–608(3). In the case at hand, Smith accepted the van, together with all the rights afforded him under the UCC. When he experienced stalling at highway speeds, he gave appellees prompt and ample opportunity to correct same. KRS 355.2–608. They gave him no assurance, but suggested that he continue utilizing the vehicle under what he perceived to be extraordinary risk. Unsatisfied with the proffered remedy, Smith revoked his acceptance by delivering the van to the dealer. *See Mayes,* 575 S.W.2d at 480.

■ The appellees, as did the circuit court, believe it incumbent upon Smith to prove by direct evidence a specific defect. In their briefs and at oral argument, the appellees relied upon *Briner v. General Motors Corporation,* Ky., 461 S.W.2d 99 (1971), for this proposition. In *Briner,* the appellant was injured in an automobile accident. She instituted an action against the manufacturer of the automobile, General Motors Corporation, and the dealer/seller, Universal. The bases of the action were "manufacturer's liability and negligent repair." *Id.* at 100. Essentially, the appellant claimed that a defect existed in the steering system of the vehicle causing her to veer across the centerline and strike another automobile and that such defect was the **proximate cause** of the accident. It is crucial to note that the appellant in *Briner* had the burden of proving not only the existence of a defect but, more importantly, that such defect **caused** the accident. Indeed, the *Briner* Court pointed out that "[t]here was no direct proof of the existence of a defective mechanical condition **existing at the time of the accident which could have caused it.**" (Emphasis added.) *Id.* at 101. The Court recognized that such "causal relationship" may be proved by circumstantial evidence but thereafter invoked the well-founded rule of law that such relationship may not be proved by an inference which is itself based upon an inference. The following is the Court's ratiocination:

> To justify a finding of liability on Universal's part would require a jury first to infer a breakdown in the steering mechanism attributable to a defect. Secondly, it would be required to further infer that, had Universal made different inspections and tests it would have discovered and corrected the condition which ultimately caused plaintiff's car to veer to the left. This is piling inference upon inference, which leads to speculation. . . .

■ . . .

As said in *Le Sage v. Pitts,* 311 Ky. 155, 223 S.W.2d 347, 352 (1949):

> "An inference may be drawn from a clearly established fact, but, if the conclusion is drawn upon a fact dependent for proof of its existence upon a prior inference, the evidentiary fact is too remote to support the conclusion."

*Id.* at 101–102. The *Briner* Court simply held that inference of a "causal relationship" was impermissible as it was based upon inference of a defective condition. Such are

**132**

not the circumstances in the case at hand. As no accident occurred, Smith need not prove a "causal relationship." The reasoning of *Briner* is inapposite to the case at hand. Smith invokes but a single inference in his attempt to prove a defective condition. We view such as clearly permissible. We think it only necessary for Smith to prove that the van stalled. Such is evidence of a defective condition. A defect may be proved by a sufficient quantum of circumstantial evidence. Indeed, it has been observed that "[i]t matters not that the evidence be circumstantial for as Thoreau put it 'Some circumstantial evidence is very strong, as when you find a trout in the milk.'" *Embs v. Pepsi–Cola Bottling Company of Lexington, Kentucky, Inc.*, Ky., 528 S.W.2d 703, 706 (1975). Considering the van's uncontroverted prior history of stalling, the witnessing of said stalling by several others besides Smith, and the documented stalling of other General Motors' vans, we liken the weight of circumstantial evidence herein to that of the proverbial "trout in the milk."

In sum, we are convinced that the record presents a material issue of fact as to whether the van's stalling was a material defect rendering the vehicle unmerchantable. Under the doctrine announced in *Steelvest*, 807 S.W.2d at 476, we are therefore of the opinion that the summary judgment upon the breach of warranty claim was inappropriate.

### Conclusion

We think summary judgment was improperly granted on Smith's claims of fraud, violation of the Consumer Protection Act, and breach of warranty.

For the foregoing reasons, the judgment of the McCracken Circuit Court is reversed, and this cause is remanded for proceedings consistent with this opinion.

ALL CONCUR.