NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0410n.06
Filed: July 9, 2008

No. 07-5533

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KENNETH E. CORDER, SR., | ) | |
| | ) | |
| **Plaintiff-Appellant** | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF KENTUCKY |
| FORD MOTOR CO., | ) | |
| | ) | **OPINION** |
| **Defendant-Appellee.** | ) | |
| | ) | |
| | ) | |

BEFORE:    MOORE and MCKEAGUE, Circuit Judges; SCHWARZER,[*] District Judge.

**WILLIAM W SCHWARZER, District Judge.** Kenneth Corder, Sr., brought this action against Ford Motor Company on behalf of himself and others similarly situated seeking damages under the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. Ann. § 367.100 et seq., restitution and other equitable and declaratory relief. Corder alleges that in May 2004 he purchased a Model Year 2004 F-250 Ford F-Series Super Duty Truck with a 6.0L Power Stroke Diesel engine and that he subsequently discovered that the truck he purchased contained a 2003.25 6.0L Power Stroke Diesel engine instead of the improved 2004 6.0L Power Stroke Diesel engine which Ford had installed in 2004 F-250 Series Super Duty trucks beginning in

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

October 2003. Corder had waited to purchase the 2004 model of the truck because of widely-reported problems with the engine in the 2003 model. Corder alleges that the sale of a 2004 truck with a 2003 engine was a deceptive practice and unjustly enriched Ford.

After initial discovery, Ford moved for summary judgment. The district court granted the motion. It held that Ford's actions were not unfair, false, misleading or deceptive. The court reasoned that the changes implemented in the 2004 engine did not result in an engine substantially different from that installed in Corder's truck and that Ford's failure to disclose the engine's manufacturing history was not a material omission. It further held that Corder had failed to show that he had suffered "ascertainable loss of money or property" within the meaning of the KCPA. Finally, the court rejected the claim for equitable relief. Corder timely appealed.

**ANALYSIS**

We review a summary judgment de novo. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). We "must view all evidence and draw all reasonable inferences in the light most favorable to the nonmoving party." *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

I.

The KCPA prohibits "[u]nfair, false, misleading, or deceptive acts in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. § 367.170(1). The words "unfair, false, misleading or deceptive" are "defined in terms generally understood and perceived by the public." *Smith v. General Motors Corp.*, 979 S.W.2d 127, 131 (Ky. Ct. App. 1998). Kentucky courts construe the

2

KCPA "broadly to effectuate its purpose of 'curtail[ing] unfair, false, misleading or deceptive practices in the conduct of commerce . . . .'" *Commonwealth of Kentucky ex rel. Chandler v. Anthem Ins. Co., Inc.*, 8 S.W.3d 48, 54 (Ky. Ct. App. 1999) (quoting *Commonwealth of Kentucky ex rel. Stephens v. North American Van Lines, Inc.*, 600 S.W.2d 459, 462 (Ky. 1979)). The Federal Trade Commission defines an act as deceptive under the analogous Federal Trade Commission Act if "first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." *In the Matter of Cliffdale Associates, Inc.*, 103 F.T.C. 110, 165 (1984).

We agree with Corder that there is sufficient evidence to raise a genuine issue of material fact regarding whether Ford's sale of a 2004 model Super Duty truck with a 2003 6.0L V-8 Power Stroke diesel engine installed was an "unfair, false, misleading or deceptive" act. First, contrary to Ford's argument that its engines do not have model years, there is substantial evidence from which a jury could find that Ford distinguished between the 2003 model and the 2004 model of the 6.0L V-8 Power Stroke diesel engine. The engine in the 2003 F-250 truck was notorious for its deficiencies which were widely publicized, including "leaky fuel injectors, oil leaks, broken turbochargers, wiring harness troubles, faulty sensors, defective exhaust gas recirculation valves and bad computers." (Joint Appendix ("JA") 848, 795.) Ford identified that engine internally as the 2003 engine, (JA 638, 640), and distinguished it from the 2004 engine in its internal documents. For example, a "Program Direction Letter" distinguished the "2004 6.0L diesel Engine" from the "03.25MY Diesel." (JA 1337.) A Ford document titled "Extraordinary Measures for 2004MY Launch" referred to "03MY and other 04MY engines" (JA 2039) and

3

another document titled "6.0L Diesel Single Agenda for Quality - OVERVIEW" referred to "2004 veh. Model year w/ 2003 engines." (JA 1335.) Ford documents also indicate that it initially planned to begin installing what it called "04 engines" in the 2004 model year trucks beginning in September 2003. (JA 1339.) A supervisor at International Truck and Engine, where the engines were manufactured, upon learning that Corder had purchased a 2004 truck, gave Corder a 2003 engine manual and a 2004 engine manual, indicating that they were different engines. (JA 946, 1053.)

There is also substantial evidence from which a jury could find that Ford made significant improvements in the 2004 engine. A 29-page memorandum created in July 2003 entitled "6L 2004 MY Issues and Resolution Plans" identifies and discusses in detail six categories of problems with the Power Stroke engine and proposes fixes for the 2004 model. (JA 1341-1370.) None of the problems and fixes appear to refer to compliance with EPA emissions requirements. Ford's internal memos contain repeated references to improvements in the 2004 engine. (JA 801-808, JA 2042.) One memo titled "Extraordinary measures for 2004MY Launch" states "all 04MY engines 100% tested . . . ." (JA 1309.) Ford admitted in interrogatory answers that the engine in Corder's truck and other Super Duty trucks assembled before September 29, 2003 did not include at least 30 improvements that were included in the 2004 engine. (JA 857-865.) Ford documents also indicate that Ford planned an early release of the 2004 model year of the Super Duty truck as "'04 badge only" with installation of the 2004 engine delayed until the fall of 2003. (JA 1331 - 1337.)

A jury could find from this evidence that a reasonable purchaser would have considered the improvements Ford made to the 2004 engine material to his choice of truck. In an analogous

case, the Kentucky Court of Appeals held that a jury could find that the sale of a vehicle as new without disclosing its pre-sale repair history was a false, misleading or deceptive act under the KCPA. *Smith v. General Motors Corp.*, 979 S.W.2d 127, 131 (Ky. Ct. App. 1998). Here, a jury could find that given the widely-known problems with the 2003 engine (JA 848, 795), a reasonable purchaser of a 2004 F-250 Super Duty truck would have expected that it did not contain a 2003 engine, and that the sale to Corder of a 2004 truck without disclosing that the truck contained a 2003 engine was a misleading and deceptive act.

We also disagree with the district court's conclusion that Corder failed to show an "ascertainable loss of money or property." Ky. Rev. Stat. Ann. § 367.220(1). The Kentucky courts have not specifically addressed what qualifies as an "ascertainable loss" under the statute. However, in *Smith*, the Kentucky Court of Appeals reversed a summary judgment for General Motors, holding that "a fact finder might reasonably conclude that the sale of the van as 'new' without disclosure of its pre-sale history constituted a false, misleading or deceptive act." 979 S.W.2d at 131. The court did not find it necessary to consider whether Smith had suffered "ascertainable loss."

The result in *Smith* is consistent with the result reached by other courts. In an analogous case involving the purchase of an automobile that plaintiff claimed was not as represented, the Connecticut Supreme Court held, interpreting Connecticut's unfair trade practices act, that "the words 'any ascertainable loss' . . . do not require plaintiff to prove a specific amount of actual damages in order to make out a prima facie case." *Hinchliffe v. American Motors Corp.*, 440 A.2d 810, 813-14 (Conn. 1981). The court reasoned:

> Moreover, the inclusion of the word "ascertainable" to modify the

5

word "loss" indicates that plaintiffs are not required to prove actual damages of a specific dollar amount. "Ascertainable" means "capable of being discovered, observed or established." . . .

. . . Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable even though the precise amount of the loss is not known.

*Id*. at 814.

And in *Scott v. Western Int'l Surplus Sales, Inc.*, 517 P.2d 661, 663 (Or. 1973), the court held that the plaintiff, who sought statutory damages under the Oregon Consumer Protection Act, had sufficiently established an "ascertainable loss," saying:

[T]he plaintiff did not have to prove in what amount the value of the tent [he had purchased] was reduced because it was not as represented. He merely had to prove he suffered some loss.

Here, Corder produced evidence from which a jury could find that the truck he purchased was not as a reasonable consumer would expect it. Though he purchased a 2004 model Super Duty truck, the engine it contained was a 2003 engine that lacked the improvements in the 2004 engine.

Moreover, Corder offered expert evidence of a professional appraiser who opined that a more recent model year Ford F-Series Super Duty truck with a 6.0L Power Stroke diesel engine generally is more valuable than earlier models. He opined that "a consumer like [plaintiff] can reasonably expect a later model vehicle will contain improvements, including engine improvements over a previous model year, and would associate an engine with a given model year as having characteristics associated with that year." (JA 2159.) We conclude that Corder has presented evidence from which a jury could find that he suffered an "ascertainable loss of

6

money or property" within the meaning of the KCPA.[1]

## II.

The district court also dismissed Corder's claims for unjust enrichment and money had and received, reasoning that there is no support for the contention that Ford's retention of any benefit would be unjust. We agree with that disposition. As the district court observed, quoting *Luithly v. Cavalier Corp.*, 181 F.3d 102, at \*4 n.2 (6th Cir. 1999), such an action lies "when money has been received by one party that, in justice and equity, belongs to another." This is not such a case.

For the reasons stated, we **VACATE** the judgment of the district court and **REMAND** for further proceedings.

---

[1] Because we hold that Corder presented sufficient evidence to raise a genuine issue of material fact regarding the KCPA claim, we do not address Corder's argument that the district court abused its discretion in denying his motion to defer consideration of Ford's summary judgment motion until the completion of merits discovery.

**McKEAGUE, Circuit Judge, Dissenting.** The 2004 F-250 Super Duty

Truck plaintiff Kenneth Corder purchased is equipped with a non-defective engine

that conforms to Ford's representations. Yet, Corder believes the engine he

received is less valuable than the engine he *assumed* the truck was equipped with.

Although he is largely satisfied with the performance of the truck and its engine,

Corder believes he was misled by Ford's material omission. In my opinion,

sympathy with Corder's indignation, whether justified or not, has clouded the

majority's application of Kentucky law to the record facts. Without ever defining

specifically how Ford's conduct could be deemed "unlawful" under Kentucky law,

the majority yields to plaintiff's urging and concludes that it could be deemed

misleading or deceptive for Ford to have marketed as new a 2004 model-year

truck equipped with an engine manufactured during model-year 2003 without

disclosing the date of the engine's manufacture. In my opinion, the majority

paints with a brush too broad, carelessly glossing over numerous critical details. I

therefore respectfully dissent.

From the outset, we recall that our appellate task is to identify error in the

district court's judgment. Absent error, the district court's judgment should be

affirmed. The district court held that plaintiff Kenneth Corder failed to carry his

burden of demonstrating the existence of a triable fact issue by presenting

8

substantial *evidence* (i.e., more than a mere scintilla of evidence) of *material* facts supporting the *essential* elements of his claim, as defined by the Kentucky Consumer Protection Act ("KCPA"). Like the district court, the majority focuses on two essential elements of the claim: whether Corder suffered an "ascertainable loss of money or property" as a result of Ford's use of "an unfair, false, misleading or deceptive practice."

### 1. *Misleading or Deceptive Practice*

Ford is not alleged to have engaged in any "unfair" or "false" practice. In fact, Corder admits that he did not rely on any affirmative misrepresentation in deciding to purchase his Ford F-250 Super Duty Truck. On purchasing his truck, he received what Ford represented he would receive, i.e., a 6.0L V-8 Power-Stroke diesel engine. His claim is based rather on the theory that Ford failed to disclose material information about the engine and that this failure is actionable as a material omission amounting to a "misleading or deceptive practice." The district court concluded that Ford had no duty to disclose the manufacturing history of its vehicles' component parts. Absent such a duty, the district court held that failure to disclose such information was neither a material omission nor a deceptive act.

The Kentucky Consumer Protection Act does does not define "misleading"

9

and "deceptive." As the majority recognizes, they are terms to be defined as they would be "generally understood and perceived by the public." *Smith v. General Motors Corp.*, 979 S.W.2d 127, 131 (Ky. App. 1998). Under Kentucky law, a material omission may be misleading or deceptive. *Id*. In *Smith*, the court held that the sale of a vehicle as new without disclosure of its pre-sale history of repairs by the dealer—repairs that had been ineffective to correct the defect—could be deemed a misleading or deceptive practice. *Id*. The majority believes this case is analogous to *Smith*. In so concluding, however, my colleagues ignore significant differences.

In *Smith*, the court recognized that generally, an omission is a material omission and is actionable only if the defendant had a *duty* to disclose. *Id*. at 129. A duty to disclose "may arise from a fiduciary relationship, from a partial disclosure of information, or from particular circumstances such as where one party to a contract has superior knowledge and is relied upon to disclose same." *Id*. In concluding that General Motors could be deemed liable for a material omission amounting to a misleading or deceptive practice, the *Smith* court identified three sources of a duty to disclose, two statutory and one in common law. *Id*. at 129-130. Here, in contrast, the majority has conspicuously failed to identify what duty Ford breached by failing to disclose the date the engine in

10

Corder's truck was manufactured or what the source of any such duty is under Kentucky law.

The majority purports to follow *Smith* by allowing the trier of fact to decide whether Ford's material omission was "misleading" or "deceptive." However, unlike the *Smith* court, the majority has failed to lay the legal groundwork for such a ruling by first identifying the legal basis for Ford's supposed duty to disclose, the breach of which rendered the nondisclosure a "material omission" under Kentucky law, potentially actionable as a misleading or deceptive act under the Kentucky Consumer Protection Act.

Corder argues that Ford had a duty to disclose the date the engine was manufactured and that the failure to disclose was a material omission because the information would have affected his choice of truck. Corder does not complain that the 6.0L V-8 Power Stroke diesel engine he received is defective.[1] Whereas

---

[1]The majority refers to the fuel-injector problems which plagued the Power Stroke engine when it was initially introduced in late 2002 and early 2003 as "notorious." Yet, Corder, who happened to work in the very Navistar plant in Indianapolis where the engines were manufactured, acknowledged that these fuel injector problems—the only problems he had been aware of—were corrected through "running" design changes by Navistar engineers before his engine was manufactured. Corder dep. p. 79, JA 896. Yes, Corder did notice black smoke coming from the tailpipe of his truck shortly after he bought it, but he admits this problem was easily corrected when he had the fuel injector reprogrammed. *Id*. at 73, JA 894.

11

Smith received an engine that remained defective despite substantial undisclosed pre-sale repairs by the dealer, Corder received an engine that was not defective, precisely because *pre-manufacture* design changes demanded of Navistar by Ford had successfully corrected the earlier problems. Corder does not allege that Ford had a duty to disclose the design refinements made in the earlier generation Power Stroke engine. Still, he believes that knowing the engine was manufactured in August 2003 (a so-called "2003.25" Power Stroke engine), rather than after September 2003 (when the "Job 1.5" Power Stroke engine was put into production), would have affected his choice because the difference, in his mind, is actually a one-year difference in the age and value of the engine. Corder dep. pp. 108-10, JA 903-04. Because the information was allegedly material to his decision, Corder argues that Ford's nondisclosure of the date of manufacture constitutes a "material omission."

Corder's proffered definition of "material omission," ostensibly adopted by the majority, is unhinged from any duty to disclose. It is in this respect inconsistent with the teaching of *Smith*, and is not supported by any other Kentucky authority.[2] The majority fails to explain why, in applying Kentucky law,

_____

[2]The majority glosses over this shortcoming in Corder's claim in one sentence by citing a 1984 Federal Trade Commission decision, *In the Matter of*
(continued...)

we should expect the Kentucky courts to enforce the Kentucky Consumer Protection Act in a manner at odds with the teaching of the Kentucky Court of Appeals in *Smith*.

The majority also sidesteps the threshold question whether Corder's professed expectation regarding disclosure of the date of engine manufacture may be fairly deemed to represent the expectation of a reasonable consumer. Even assuming the truthfulness of Corder's testimony about the significance, in his mind, of the precise date of the engine's manufacture, is this the perception of a "reasonable consumer?" Would a reasonable consumer (in contrast with an employee at the plant where the engines were manufactured), shopping for a 2004 F-250 Super Duty Truck in May 2004, consider the precise date of the engine's manufacture (whether in August 2003 or October 2003), or even the label assigned to the particular 6.0L V-8 Power Stroke diesel engine (whether "2003.25" or "Job 1.5"), a material factor in his or her purchase decision? The implied conclusion that such an expectation is objectively reasonable strains plausibility.

---

[2](...continued)
*Cliffdale Associates, Inc.*, 103 F.T.C. 110, 165 (1984). In *Cliffdale*, the Kentucky Consumer Protection Act was not at issue, of course. Rather, the Commission was construing and applying the Federal Trade Commission Act. Morever, even in the language quoted from *Cliffdale*, it is made clear that an omission can be deemed a deceptive act only if the omission was a *material* omission.

For this reason, ostensibly, the majority nowhere identifies specifically what Ford was obligated to disclose in order to render its sale to Corder of the 2004 F-250 Super Duty Truck with 2003.25 Power Stroke engine other than misleading or deceptive. Instead, the majority points to evidence that the "Job 1.5" version of the Power Stroke engine incorporated numerous improvements not incorporated into the predecessor "2003.25" version. Notwithstanding undisputed record evidence that these improvements were primarily designed to address new 2004 EPA-mandated emission-control requirements and did not materially affect any of the engine's performance features, such as horsepower and torque, the majority simply states that a reasonable purchaser would have considered these improvements material to his or her choice of truck. The majority thus impliedly holds that Ford had a duty to affirmatively disclose to Corder, without being asked, that the 6.0L V-8 Power Stroke diesel engine in the F-250 Super Duty Truck he purchased was not designed to meet 2004 EPA emission-control standards. Yet, again, no source for such a duty is identified. Absent such a duty under Kentucky law, I fail to see how Ford's failure to disclose this information can properly be deemed to amount to an unlawfully misleading or deceptive practice.

**2.** *Ascertainable Loss*

My colleagues also disagree with the district court's conclusion that Corder failed to present evidence that he has suffered an "ascertainable loss of money or property." The record shows that Corder continues to own the 2004 F-250 Super Duty Truck, that he is satisfied with the performance of the truck, that he can use the truck for all of its intended purposes, and that he has no express plans to sell it. Corder's alleged disappointment stems not from the performance of his engine, but from his sense that the truck's value is diminished because of earlier negative publicity about the first- generation Power Stroke engines. Even though the earlier defects may have been corrected in the "2003.25" engine he has, Corder wishes he had the "Job 1.5" engine introduced after September 29, 2003, which is not only free of the notorious defects of the past, but is also *perceived* as such. Corder "believes," based on conversations with people at work and outside of work, that his truck is worth $5,000 to $10,000 less than a 2004 F-250 Super Duty Truck equipped with an engine manufactured after September 29, 2003. Corder dep. p. 163, JA 917. He admitted he has no other support for his opinion. *Id*.

The district court held that Corder's bare assertion of harm is too speculative. Such a *potential* loss, unsupported by factual showing or legal support, was held to be insufficient to satisfy the ascertainable loss requirement of the Kentucky Consumer Protection Act. The majority disagrees, observing that

"ascertainable loss" has not been specifically defined by the Kentucky courts. My colleagues therefore rely on opinions from courts in Connecticut and Oregon to conclude that Kentucky law does not require evidence of actual loss to make out a viable claim under KCPA.

Again, I believe the majority takes improper liberties with Kentucky law. While "ascertainable loss" has not been specifically defined by the legislature or case law, the available authorities indicate that "ascertainable loss of money or property" has been defined in Kentucky in accordance with its plain and ordinary meaning. *See Schlenk v. Ford Motor Credit Co.*, 308 F.3d 619, 622 (6th Cir. 2002) (affirming dismissal of KCPA claims for lack of showing of ascertainable loss); *Red Bird Motors, Inc. v. Endsley*, 657 S.W.2d 954, 956 (Ky. App. 1983) (reversing judgment for the plaintiff on KCPA claim for lack of proof of specific damage). Kentucky law hardly supports the proposition that Corder has adequately demonstrated an ascertainable loss in money or property where the *presumed* loss in value has neither been actually sustained nor substantiated even by comparative appraisals.

The majority considers the expert opinion of automobile appraiser Wayne Marsden sufficient to create a genuine issue of material fact. Marsden opined that a 2004 model year Ford F-Series Super Duty Truck that has a 6.0L Power Stroke

16

diesel engine manufactured prior to September 29, 2003 has reduced resale value in comparison with trucks equipped with the same engine manufactured after September 29, 2003. This is said to be (1) due to the reputation of the former engine, and (2) due to improvements made in the latter engine. Marsden aff. ¶¶ 10-12, JA 2061. Marsden opined that "a consumer like Mr. Kenneth Corder has suffered a financial loss by his purchase of a 2004 vehicle containing a 6.0L Power Stroke diesel engine manufactured prior to September 29, 2003." *Id*. at ¶ 13, JA 2062.

Marsden's opinion is as interesting for what it does not say as for what it does say. While Marsden baldly stated that "a consumer like Corder" has "suffered" a "financial loss," he (a) did not explain *how* Corder (who is satisfied with the performance of his truck and has no intent to sell) can be deemed to have suffered a loss; (b) did not characterize the loss as an "ascertainable loss of money or property;" (c) did not even attempt to ascertain or quantify the loss; and (d) did not tie the loss to any misleading or deceptive practice by Ford (as opposed to Corder's inaccurate assumption), as required by the KCPA. In my opinion, Marsden's opinion, while probative, is insufficient, standing alone, to create a triable fact issue on Corder's claim under the Kentucky Consumer Protection Act.

Having carefully reviewed the majority's opinion in light of the

17

requirements of Kentucky law and the record evidence relied on by Corder, I remain unpersuaded that the district court erred in granting summary judgment to Ford. Accordingly, I respectfully dissent.