**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STEVEN P. LANGDON**
McNeely Stephenson Thopy & Harrold
New Albany, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES P. MOLOY**
**KEVIN M. QUINN**
**NATHAN T. DANIELSON**
Bose McKinney & Evans LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ABDUL G. BURIDI, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  10A01-1212-MF-580 |
| | ) | |
| RL BB FINANCIAL, LLC, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Roger L. Duvall, Special Judge
Cause No. 10C02-1102-MF-79

**July 31, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, several doctors, including appellant-defendant Dr. Abdul G. Buridi, invested in a medical center. To secure the necessary loan to build the facility, the bank required personal guaranties from some of the doctors as additional collateral. Eventually, the real estate investment company that had obtained the loan to build the medical center defaulted on the loan by failing to make payments and to pay property taxes. Consequently, appellee-plaintiff RL BB Financial, LLC (RL BB) filed a complaint to enforce all the personal guaranties.

RL BB moved for summary judgment, which was granted, and judgment was entered against Dr. Buridi for the limit of his guaranty, which was $430,000. After this judgment was affirmed on appeal, Dr. Buridi filed a motion under Indiana Trial Rule 60(B), asking that the judgment be set aside because of newly discovered evidence, namely, that RL BB's predecessor had perpetuated fraud to induce him to sign the personal guaranty. More particularly, Dr. Buridi claimed that the bank knew that a smaller medical center was going to be built than what had been originally planned but failed to inform him before he signed the personal guaranty.

The trial court denied the motion, and Dr. Buridi appeals, arguing that the trial court erred by denying his motion. Concluding that it is within the trial court's sound discretion whether to set aside a judgment on the basis of newly discovered evidence, we affirm.

2

Kentuckiana Investors, LLC (KI), which consists of practicing physicians, including Dr. Buridi, invested in the construction of a new hospital in Clark County (the Hospital Project). The completed hospital would be operated by Kentuckiana Medical Center, LLC (Medical Center). Dr. Buridi became affiliated with KI in 2006, when he was approached by Dr. Christodulous Stavens and Dr. Eli Hallal to invest in the project.

On June 21, 2007, KMC Real Estate Investors, LLC, (KMC) executed a note to the Branch Banking & Trust Company (BB&T) in the amount of $21.5 million. The note was secured by a mortgage on KMC's real property and the new hospital building that was to be constructed with the loan proceeds.

Prior to the execution of the note, BB&T sent out a commitment letter (the "Commitment Letter") outlining the major terms of the loan. The Commitment Letter indicated that BB&T required personal guaranties from various parties in varying amounts, including a $430,000 personal guaranty from Dr. Buridi. The Commitment Letter also confirmed that the loan proceeds were to be used to construct a "60 bed acute care" hospital facility. Appellant's App. p. 645. Page seven included a paragraph stating:

> **Basis of Commitment**. The undersigned Borrower and Guarantors acknowledge that this Commitment is based materially upon financial information provided to [BB&T] by Borrower and others, and the undersigned Borrower and Guarantors hereby warrant and represent that such information was true and correct in all material respects when rendered and that no material change has occurred therein through the date of the execution of this commitment. All material facts relating to the loan

or the assets, business, profits, prospects, or conditions (financial or otherwise) of Borrower have been disclosed to Bank by the Borrower and Guarantors.

Id. at 651.

The Commitment Letter also indicated that BB&T's lending commitment to KMC was voidable at the option of BB&T if the Medical Center breached the terms of the Commitment or the financial conditions of KMC or the guarantors materially changed. Dr. Buridi read the entire Commitment Letter before signing as one of the guarantors on May 21, 2007.

Leading up to the execution of the final loan documents, Dr. Buridi participated in various meetings relating to the plans for the Hospital Project and the loan to be obtained from BB&T. These meetings were held with the management of the Hospital Project, including Dr. Stavens. Representatives from the Medical Center negotiated with BB&T the limited personal guaranties that were required as additional collateral, including Dr. Buridi's guaranty. Dr. Buridi did not have any contact with any representative from BB&T in connection with the negotiation, solicitation, execution, or delivery of his guaranty.

Dr. Buridi did not read his $430,000 personal guaranty before signing it. Dr. Buridi's guaranty is governed by Kentucky substantive law and identifies the Hospital Project as "an acute care hospital facility to be constructed by [KMC] and located in or near Clarksville in Clark County, Indiana." Appellant's App. p. 68. The anticipated

number of hospital beds to be included in the Hospital Project was not included in the guaranty.

Furthermore, Dr. Buridi's guaranty is "a guaranty of payment, not of collection," and indicates that BB&T:

> shall not be obligated prior to seeking recourse against or receiving payment from [Dr. Buridi], to do any of the following . . . all of which are hereby unconditionally waived by [Dr. Buridi]:
>
> ***
>
> (ii) take any steps whatsoever to accept, perfect Lender's interest in, foreclose or realize on collateral security, if any, for the payment of the Indebtedness, or any other guaranty of Indebtedness . . . .

Appellant's App. p. 69. Dr. Buridi also waived "any set-offs or counterclaims against Lender which would otherwise impair Lender's rights against [Dr. Buridi] hereunder." Id. at 70.

KMC used the loan proceeds to complete the Hospital Project, which was constructed to include forty-eight beds. When the Hospital Project was completed, the Medical Center leased and operated the hospital. When the hospital began operations in the spring 2009, Dr. Buridi realized that it included only forty-eight beds. Dr. Buridi discussed the reduced number of beds with the other KI investors and managers of the Hospital Project in 2009.

RL BB purchased the loan from BB&T in 2010, and loan documents were assigned to RL BB on September 30, 2010. KMC defaulted on the loan by failing to make the required payments, including real estate taxes.

5

On February 23, 2011, RL BB filed a complaint seeking to foreclose on the mortgage, to foreclose its security interest in personalty, and for the appointment of a receiver. The complaint sought to enforce all the personal guaranties of the guarantors, including Dr. Buridi, as well as the maker of the note, KMC. RL BB sought judgment against KMC in the amount of $20,606,598. However, on April 1, 2011, KMC filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Southern District of Indiana, which automatically stayed the trial court litigation against KMC. The stay, however, did not affect RL BB's claims against Dr. Buridi or the other guarantors, and Dr. Buridi filed his answer and affirmative defenses on April 18, 2011.

On May 12, 2011, RL BB moved for summary judgment against Dr. Buridi and the other guarantors. Dr. Buridi responded on June 28, 2011, and RL BB replied on July 26, 2011. The trial court held a hearing on August 2, 2011, and after it concluded, the trial court granted RL BB's motion for summary judgment.

On September 8, 2011, the trial court entered a final judgment against Dr. Buridi and the other guarantors pursuant to Trial Rule 54(B) (the "Judgment"). The Judgment against Dr. Buridi is in the principal sum of $430,000, which is the limit of his personal liability under the terms of his written guaranty.

Dr. Buridi, along with a number of other guarantors, appealed the trial court's entry of summary judgment in RL BB's favor. On June 4, 2012, a panel of this Court affirmed the trial court's judgment, and denied rehearing on July 24, 2012. KMC Real

Estate Investors, LLC v. RL BB Fin., LLC, 968 N.E.2d 873, *1 (Ind. Ct. App. 2012), reh'g denied.

On August 22, 2012, Dr. Buridi filed a motion pursuant to Trial Rule 60(B) (Rule 60(B)) "requesting that the Court vacate its final judgment against [Dr. Buridi] on the grounds of newly discovered evidence; specifically, evidence supporting a defense of fraud to the breach of contract claim brought by Plaintiff RL BB Financial, LLC." Appellant's App. p. 415.

Dr. Buridi claimed that this new evidence surfaced during separate proceedings. More specifically, before judgment was entered against Dr. Buridi, he had commenced a lawsuit against individuals involved in the Hospital Project in the Jefferson Circuit Court in Kentucky. Then, on July 12, 2012, Dr. Buridi filed a second lawsuit in the Jefferson Circuit Court in Kentucky, which related to the loan against BB&T, the assignor of RL BB's interest in the instant case. This suit was subsequently removed to the United States District Court for the Western District of Kentucky.

RL BB filed its memorandum in opposition of Dr. Buridi's motion on September 21, 2012, and Dr. Buridi filed a reply on October 4, 2012. After conducting a hearing on October 30, 2012, the trial court denied the motion. The trial court observed that the "relief sought by Dr. Buridi is extraordinary relief and generally viewed with disfavor." Appellant's App. p. 36. Dr. Buridi now appeals.

## DISCUSSION AND DECISION[1]

### I. Standard of Review

Initially, we observe that a Rule 60(B) motion is addressed to the "equitable discretion" of the trial court. Ind. Ins. Co. v. Ins. Co. of N. Am., 734 N.E.2d 276, 278 (Ind. Ct. App. 2000). The grant or denial of a Rule 60(B) motion will be reversed only when the trial court has abused its discretion. Id. When the trial court's action is clearly erroneous, an abuse of discretion will be found, and a trial court's action is clearly erroneous when it is against the logic and effect of the facts and circumstances before it or the inferences that may be drawn therefrom. Id. at 279.

### II. Rule 60(B)(2)

When ruling on a Rule 60(B) motion, the trial court is required to "'balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and society in general in the finality of litigation.'" Goldsmith v. Jones, 761 N.E.2d 471, 474 (Ind. Ct. App. 2002) (quoting V.C. Tank Lines, Inc. v. Faison, 754 N.E.2d 1061, 1064 (Ind. Ct. App. 2001)).

Rule 60(B)(2) provides that a "court may relieve a party or his legal representative from a judgment . . . for . . . newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59."

---

[1] In Dr. Buridi's brief, he has included a section requesting oral argument. We direct counsel's attention to Appellate Rule 52 for the proper procedure for requesting oral argument. In short, the proper procedure is by filing a motion with the court. Dr. Buridi's request is denied.

Additionally, "[a] movant filing [because of newly discovered evidence] must allege a meritorious claim or defense." Ind. Trial Rule 60(B).

Here, the trial court denied Dr. Buridi's motion because the evidence presented in support of the motion was based on "speculation and assumption," and the evidence did not "set forth a basis to find fraud on the part of BB&T." Appellant's App. p. 36. Dr. Buridi challenges each of these findings; thus, we will address each one.

## A. Speculative Evidence

This Court has said that "[r]elief from a judgment based upon newly discovered evidence requires a showing that the evidence is material, not merely cumulative or impeaching, not discoverable by due diligence and that it would reasonably and probably alter the result." Freels v. Winston, 579 N.E.2d 132, 135 (Ind. Ct. App. 1991). Further, "[n]ewly discovered evidence warrants relief from summary judgment only where it creates a genuine issue of material fact or where the moving party is no longer entitled to a judgment as a matter of law." Id.

In the instant case, Dr. Buridi's Rule 60(B) motion is replete with assertions such as:

- BB&T was "aware that it was lending funds to build a far smaller hospital than the one described in its own loan documents." Appellant's App. p. 416.

- "As a sophisticated purchaser of pools of distressed loans, Rialto[2] assuredly conducted due diligence into this transaction which would have uncovered the glaring discrepancy between the project

---

[2] Apparently, RL BB is an affiliate of Rialto. Appellant's App. p. 421.

described in the loan file and the actual collateral it was acquiring." Id. at 416-17 (emphasis added).

- "Upon information and belief, BB&T reviewed and approved an $18.5 million construction budget and design for a 48 bed hospital which was inconsistent with its own loan documents and the information which had been provided to physician investors." Id. at 419.

- "Movant learned that, based on BB&T's internal loan review and approval process, it was seemingly impossible that BB&T would have been unaware that the hospital project had been scaled back at the time the loan was extended." Id. at 426 (emphasis added).

- Perhaps most compelling, Dr. Buridi maintains: Rialto "knew or in the exercise of reasonable diligence should have known that the transaction was tainted by fraud. Discovery will confirm this." Id. at 429 (emphasis added).

Here, based on the hypothetical nature of Dr. Buridi's contentions, the trial court was presented with no evidence from which it could determine whether a genuine issue of material fact had been created such that the result of the August 2, 2011 summary judgment hearing would probably be altered. Consequently, the trial court did not err by determining that Dr. Buridi's contentions were speculative and based on assumption.

Nevertheless, Dr. Buridi argues that in the course of pursuing various contract and tort claims against other persons who contracted with KI and KMC, Dr. Buridi discovered the depositions of Dr. Stavens and Dr. Hallal, which were taken on February 28, 2012, and March 1, 2012, respectively. Based on the testimony in these depositions, Dr. Buridi asserts that he learned facts strongly suggesting that BB&T knew that at the

10

time the loan was extended and the guaranties procured, the Hospital Project would not be built as represented in the loan documents.

More particularly, Dr. Stavens testified that before the loan was executed, Hospital Management informed BB&T that a sixty-bed hospital could not be built with the $21.5 million that BB&T was willing to loan. Appellant's App. p. 575. However, BB&T refused to loan additional funds with actual knowledge that the proceeds would be used to build a forty-eight bed hospital. Id.

First, it is well within the trial court's discretion to determine whether new evidence is sufficient under Rule 60(B). Freels, 579 N.E.2d at 135. That said, Dr. Stavens's testimony does not establish that BB&T was "fully aware" that the scope of the Hospital Project had been reduced. Appellant's Br. p. 10. Indeed, Dr. Stavens indicated that he had no personal knowledge about when BB&T had been advised regarding the reduced number of hospital beds. Appellant's App. p. 575. Therefore, this argument fails.

### B. Fraud by BB&T

Dr. Buridi also argues that BB&T committed "fraud by omission" in connection with the loan. Appellant's Br. p. 20. Under Kentucky law, a claim for fraud by omission is grounded in a duty to disclose. Giddings & Lewis, Inc., v. Indus. Risk Insurers, 348 S.W.3d 729, 747 (Ky. 2011). Thus, to succeed on a claim of fraud by omission, a party must prove: (1) there was a duty to disclose the material fact at issue; (2) the other party failed to disclose the material fact; (3) the other party's failure to disclose the material

11

fact induced the complaining party to act; and (4) the complaining party suffered actual damages as a consequence. Id.

The existence of a duty to disclose is a question of law for the court. Id. Under Kentucky law, a duty to disclose arises in four circumstances: (1) where there is a confidential or fiduciary relationship; (2) where there is a statutory duty; (3) where a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure; and (4) where one party to a contract has superior knowledge and is relied upon to disclose this knowledge. Id. at 747-48.

Rather than relying on a fiduciary relationship, Dr. Buridi claims that the Commitment Letter constituted a representation by BB&T regarding the number of beds to be included in the Hospital Project and that Dr. Buridi's personal guaranty "created the impression of full disclosure, but contained only partial and misleading disclosures" regarding the Hospital Project. Appellant's Br. p. 16. Additionally, Dr. Buridi claims that "BB&T had superior knowledge regarding this issue which [he] relied upon BB&T to disclose." Id.

Concerning Dr. Buridi's partial disclosure claim, Kentucky law is fairly clear that "'mere silence does not constitute fraud [by omission] where it relates to facts open to common observation or discoverable by the exercise of ordinary diligence, or where means of information are as accessible to one party as to the other.'" Giddings, 348 S.W.3d at 749 (quoting Bryant v. Troutman, 287 S.W.2d 918, 920-21 (Ky. 1956)).

12

Here, other than Dr. Buridi's bald assertions to the contrary, he fails to establish that BB&T knew that the plans for the Hospital Project changed before the loan was executed. Similarly, Dr. Buridi cannot show that his guaranty created an impression of full disclosure but contained only partial disclosure. Indeed, his personal guaranty did not recite anything about the number of hospital beds. Specifically, the personal guaranty stated that KMC would receive a loan from BB&T "in a principal sum not to exceed TWENTY-ONE MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($21,500,000) (the "Loan") relative to an acute care hospital facility . . . ." Appellant's App. p. 68.

Regarding whether BB&T had superior knowledge that Dr. Buridi relied on BB&T to disclose, under Kentucky law, for a party to have superior knowledge, it must be shown that all parties did not have equal access to the pertinent information. Giddings, 348 S.W.3d at 748. The Giddings Court illustrated the superior knowledge duty by discussing Smith v. General Motors Corp., 979 S.W.2d 127 (Ky. App. 1998), where a new vehicle dealership had failed to disclose that a new van had received extensive repairs. 348 S.W.3d at 748. Because the dealership had serviced the van, it was in a superior position at the time of the sale, but withheld the information. Id. The Giddings Court distinguished Smith from its case, noting that a "contract for a custom-made product resulting from engineering input by both the buyer and seller is plainly not an instance of one party having superior knowledge not available to the other." Id.

13

Here, the Commitment Letter simply restated the details of the Hospital Project, which were consistent with the details that Dr. Buridi already knew through the course of his meetings with fellow investors including Dr. Stavens. Appellant's App. p. 712, 715. Additionally, the number of beds to be included in the Hospital Project was open to discovery by Dr. Buridi through these meetings, which included a slide show. Id.

Moreover, Dr. Buridi's own statements contradict his claim that he relied upon BB&T to disclose information. For instance, Dr. Buridi admitted that he neglected to read the personal guaranty before signing it. Id. at 261. In addition, Dr. Buridi "had no communications with any representative of BB&T prior to, or at the time of, [] signing the Guaranty." Id. Dr. Buridi claimed that the Hospital Project's scope was reduced "[d]ue to the mismanagement and breaches of fiduciary duties by management of KI," the Medical Center, and KMC. Id. at 260. Dr. Buridi also testified that he was a "very seasoned businessman, you can look at my financials see how I do my other businesses . . . ." Id. at 714. In light of this evidence, we cannot conclude that BB&T had superior knowledge than Dr. Buridi or that Dr. Buridi relied on BB&T to disclose that information. Consequently, this argument also fails. Thus, the trial court did not err by concluding that Dr. Buridi's proffered newly discovered evidence was insufficient to set aside the entry of summary judgment against him.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.