**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0802n.06

No. 12-6021

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 29, 2013
DEBORAH S. HUNT, Clerk

MORRIS AVIATION, LLC,                      )
                                           )
     Plaintiff-Appellant,              )
                                           )
v.                                         )  On Appeal from the United States
                                           )  District Court for the Western
DIAMOND AIRCRAFT INDUSTRIES, INC.,         )  District of Kentucky
                                           )
     Defendant-Appellee.               )


Before:     BATCHELDER, Chief Judge; GUY and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.  Plaintiff Morris Aviation, LLC (Morris), purchased an airplane manufactured by Diamond Aircraft Industries, Inc. (Diamond), through one of Diamond's authorized dealers.  The airplane's engines, however, were manufactured and warrantied by a different company, Thielert Aircraft Engines, GmbH (TAE).  In sales negotiations with Morris, Diamond and its agents emphasized the "quality and reliability" of TAE and its engines; a few weeks after the sale TAE declared bankruptcy and voided its warranties.  Morris filed suit against Diamond, alleging that Diamond fraudulently or negligently misrepresented or concealed TAE's financial health.  The district court dismissed the complaint for failure to state a claim.  Because Diamond's statements were mere predictions and opinions, and because Diamond had no duty to disclose, there was no actionable fraud or negligence.  We therefore affirm the judgment of the district court.

**I**

Dr. John Morris, who had decided to start an air-taxi business, was looking to purchase several aircraft. Lacking significant piloting experience himself, Morris engaged his friend, Dr. Todd House, to assist with the acquisition process. In January 2007, House contacted Diamond, a Canadian aircraft manufacturer, expressing his interest in Diamond's DA42 Twin Star ("DA42"), a four-seat, two-engine airplane. House traveled to a Diamond facility in Ontario and received an extensive presentation on the DA42 and its specifications. One significant aspect of the potential purchase was the DA42's turbo diesel engines, manufactured by TAE, a German corporation. Diesel engines were new to the aircraft industry, and as a result would require frequent inspections and maintenance. Diamond explained that the engines would be covered by a TAE warranty, "parts and labor prorated over 2,400 hours or 12 years," with replacement in full at prorated cost if replacement were necessary before 2,400 flight-hours.

In May 2007, House formally began negotiations to purchase five DA42s from Premier Aircraft Sales, an authorized dealer of Diamond aircraft in Kentucky. Although the contract and purchase would be with Premier, Diamond representatives remained involved in the sales process. In early 2008, while the negotiations were ongoing, Morris was informed that another DA42 had suddenly become available for sale. By the end of March, Morris purchased the single DA42 for $634,977. Approximately two weeks later, TAE declared bankruptcy in Germany, and voided its engine warranties. Left without a warranty on the engines, Morris sought to trade in his aircraft for one of Diamond's new DA42s, which were powered by Diamond's own recently developed engines.

Diamond refused the trade, and Morris brought this suit, alleging fraudulent misrepresentation and concealment, negligent misrepresentation, and violations of Kentucky's Consumer Protection Act.

All of Morris's claims stem from the allegation that Diamond knew of TAE's impending financial troubles, and misrepresented the nature of the TAE warranty. In his First Amended Complaint, Morris specifically alleged:

> [1] During the purchase negotiations, Diamond made representations to Plaintiffs regarding the length and reliability of the TAE engine warranty.
>
> [2] Through sales material and information provided to Plaintiffs by Diamond's authorized distributors, Diamond endorsed TAE as a reliable and quality company.
>
> [3] Diamond prepared and supplied Morris with a written "Diamond DA42-tdi Operating Cost and Break-even Analysis" ("Break-even Analysis"), which indicated that the TAE engines would not require an overhaul until they reached at least 2,400 operating hours.
>
> [4] Plaintiff relied on Diamond's representations about the quality and reliability of TAE, the TAE engines, and TAE's engine warranty in electing to purchase the DA42.

Diamond filed a motion to dismiss, which the district court granted. The district court held that Diamond's alleged statements were opinion, not fact, or were not alleged to be false, and therefore could not form the basis for a fraudulent-misrepresentation claim. As to Morris's fraudulent-concealment claim, the court explained that a formalized contractual relationship is required for there to be a duty to disclose, and thus Diamond, which was not party to the contract for sale, could not be liable. Finally, the district court concluded that while opinions may be actionable negligent misrepresentations, Morris's complaint failed to allege fraud with "particularity," as required by

No. 12-6021
*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*

Federal Rule of Civil Procedure 9(b). However, the district court permitted Morris to amend his complaint with respect to the negligent-misrepresentation claim.[1]

To support his general allegations, Morris provided further details about the representations of Jeff Owen, who dealt with Morris throughout the sales process, initially as Director of Aircraft Sales at Diamond, and subsequently as Regional Sales Manager at Premier. In particular, Morris alleged that Owen:

> [1] explained that the engines were manufactured by TAE and that, while the technology was relatively new and untested, Diamond had negotiated with TAE to provide extensive warranties on the engines to make use and maintenance affordable[;]
> [2] assured Dr. House that the engine warranty and life-extension program would protect the aircraft owner from the risks involved with new technology and that Dr. House could rely on TAE for this warranty[; and]
> [3] flew several demonstration flights and went over many of the details regarding TAE, the engine, and its warranty with Dr. Morris, Dr. House, and others while continuing to tout the security provided by that warranty.

Diamond again filed a motion to dismiss, which the district court granted on the basis of the "economic loss" doctrine, recently recognized by the Kentucky Supreme Court in *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729 (Ky. 2011). Under this doctrine, economic losses (i.e., losses from diminution in value of a product) can only be recovered in contract, not tort. Although *Giddings* dealt with parties to a contract, the district court concluded that if faced with the

---

[1]The district court dismissed the fraudulent misrepresentation and concealment claims with prejudice before the Second Amended Complaint. But even considering the more particularized allegations in the Second Amended Complaint   as we will in this opinion's analysis   Morris's fraud claims fail.

- 4 -

question, the Kentucky Supreme Court would hold that contractual privity was not necessary for application of the doctrine.

After this decision, Morris filed a motion to reconsider under Rule 59(e), restating some of his legal arguments and presenting "new evidence" that Diamond was aware of TAE's impending insolvency. In particular, Morris attached an email written by Diamond's President, Peter Mauer, six months before TAE declared bankruptcy:

> Wow, good news on the TAE stock    he'll be bankrupt soon! Oh wait, we aren't finished with our engine    what will we do now? Quick get the DA42 Lycoming certified. . . . or maybe we will take over TAE    but then we have to carry his warranty obligations    what do we do now? Oh, well    main thing is that Theilert is dying. Might kill us too, but we WIN!

(ellipsis in original). The district court did not find the email significant, finding it "purely speculative and based on publicly disclosed financial stock information." Morris has appealed the dismissal of all of his claims (except his Kentucky Consumer Practices Act claim), and the denial of the motion to reconsider.

## II

We review de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6). *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, that complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must "accept as true" the factual allegations in a complaint, but will not be bound by legal

conclusions "couched as a factual allegation" or naked assertions "devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Due to the "high risk of abusive litigation," *Twombly*, 550 U.S. at 569 n.14, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under this rule, a plaintiff must specify 1) what the fraudulent statements were, 2) who made them, 3) when and where the statements were made, and 4) why the statements were fraudulent. *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). As with fraudulent-misrepresentation and fraudulent-concealment claims, negligent-misrepresentation claims under Kentucky law are subject to Rule 9(b)'s heightened pleading standards. *Republic Bank*, 683 F.3d at 247 48 (citing *Thomas v. Schneider*, No. 2009 CA 002132 MR, 2010 WL 3447662, at *1 n.2 (Ky. Ct. App. Sept. 3, 2010)).

### III

Under Kentucky law, to establish fraudulent misrepresentation a plaintiff must prove by clear and convincing evidence:

> (1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff.

*Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 548 49 (Ky. 2009). The reliance must be "reasonable." *Id.* at 549. Of particular importance to this case, the misrepresentation additionally "must relate to a past or present material fact." *Ibid.* In other words, "[a] mere statement of opinion

or prediction may not be the basis of an action." *McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170, 172 (Ky. 1955). Thus fraud cannot be premised on either future predictions *or* generalized, subjective opinions such opinions instead are characterized as ordinary sales talk or "puffing," and a buyer must "exercise common sense" before relying on a seller's self-interested opinions.[2] *Flegles*, 289 S.W.3d at 549 50; *see also Vokes v. Eaton*, 85 S.W. 174, 177 (Ky. 1905) ("Puffing by sellers is universal, and every one buys knowing that he must exercise his own judgment on matters of opinion expressed by the seller."). Only in narrow circumstances can opinions or predictions form the basis for fraud, such as where "the opinion either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious sham." *Flegles*, 289 S.W.3d at 549. Furthermore, these "deception exceptions" will fail if "the purchaser has an opportunity to ascertain for himself such value by ordinary vigilance or inquiry . . . even when [the statements were] made with intention to deceive." *Ibid*. (quoting *Ky. Elec. Dev. Co.'s Receiver v. Head*, 68 S.W.2d 1, 3 (Ky. 1934)).

Morris has essentially two theories of fraud. First, he claims that Diamond misrepresented the terms of the warranty, including its length. Diamond stated that the warranty was good for 2,400 flight-hours; as it turned out it was good for zero. But there was no affirmative misrepresentation of fact here. Diamond accurately described the terms of the warranty, and limited the scope of its representations to the legal provisions of the warranty, not its viability. Morris cannot convert a

---

[2]Predictions, too, may have the characteristics of puffing, *see, e.g.*, *Flegles*, 289 S.W.3d at 550 (potential rental program characterized by defendant as a "cash cow"), but are non-actionable even if they are more specific.

potentially fraudulent concealment into an affirmative fraudulent misrepresentation. Even if Diamond had affirmatively represented that TAE would not void its warranties, this is a matter of prediction that is non-actionable.[3]

Second, Morris claims that describing TAE and its warranty as "quality" and "reliable" misrepresented TAE's status as financially troubled and potentially bankrupt. Again, Morris reads too much into Diamond's statements. Claims that TAE is a quality and reliable company, in the context of doubts about the newly developed diesel engine, refer to TAE's manufacturing capabilities, not financial health.

But even assuming that "quality" and "reliability" describe the financial health of TAE and the viability of its warranty, Diamond's statements remain non-actionable. Generalized, subjective terms like "quality" and "reliability" are plainly self-serving opinions, puffery on which no buyer would reasonably rely. *See Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1009 (7th Cir. 2004) ("A generic promise to provide 'high quality' services cannot therefore be the basis of a mail fraud claim."); *Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 931 (C.D. Calif. 1996) ("The word 'reliable' is inherently vague and general in common parlance akin to a statement that the machine is 'fine.'").

---

[3]This is consistent with the district court's holding that "Diamond could not have known" that TAE's warranties would be voided. Morris argues that this holding means the district court improperly found facts at the pleading stage and shifted the burden of proof. But the district court did not hold that Morris failed to meet the third element of fraudulent misrepresentation (knowledge of falsity); instead it held that Diamond's statements do not contain the type of facts susceptible of past or present knowledge.

On occasion, opinions and predictions may nevertheless be intertwined with assertions of past or present objective fact, and thus form the basis for fraud. In *Republic Bank*, for example, this court held that a statement that an investment in a mortgage-backed security was "reasonably safe" could be actionable fraud. 683 F.3d at 249. While the statement included forward-looking aspects (the safety of a securitization is dependent on the performance of the underlying loans), the statement also implicitly referred to "the security's structural qualities *at the time of sale*." *Ibid*. (emphasis added). In particular, while a reasonably safe investment would have "rested on loans made according to some underwriting standards," this particular securitization was "based on loans issued according to no underwriting standards at all." *Ibid*. Under the *Republic Bank* theory, therefore, a seller has some leeway to puff his wares, but may not promote a characteristic that does not exist at all. Such circumstances are not present in this case. Financial health is only one factor in the overall assessment of "quality" or "reliability," and no one has contested the general merits of TAE's engines. For a misleading opinion to be actionable, the difference must be one of kind (e.g., no underwriting standards at all), not degree (e.g., riskier-than-expected mortgages).

Although he does not explicitly lay down the rule, Morris's arguments are best targeted at the "deception exceptions" for predictions and opinions. While Morris's focus on Diamond's "knowledge" of TAE's financial problems does little to show a misrepresentation of fact, it does suggest that Diamond may have intentionally misstated its opinion. Nevertheless, Morris's allegations do not establish circumstances sufficiently egregious to warrant application of the exceptions. The first possibility, that Diamond's opinions were based on "falsified past or present

facts," is inapplicable. *Flegles*, 289 S.W.3d at 549.[4] As discussed above, Diamond's opinions were based on future possibilities, not past or present facts, falsified or otherwise. *Cf. Long John Silver's Inc. v. Nickleson*, No. 3:11 CV 93 H, 2013 WL 557258, at *10 (W.D. Ky. Feb. 12, 2013) (holding that deception exceptions applied where financial projections were based on untrue financial information relating to two other franchises).

The second possibility, that Diamond's statements were "so contrary to the true current state of affairs" that the predictions were an "obvious sham," is closer to what Morris is driving at. *Flegles*, 289 S.W.3d at 549. Kentucky courts have applied this exception "when a deliberately false opinion is expressed or when a promise is made with the present intent of a future breach, or with no intention of carrying out the promise." *Edward Brockhaus & Co. v. Gilson*, 92 S.W.2d 830, 835 (Ky. 1936) (statement about future listing of stock would be fraud if no purpose or expectation to list). In this case, however, Diamond's alleged misrepresentations concern the future activities of third parties, including TAE (in declaring bankruptcy), German authorities (in permitting warranties to be voided), and other manufacturers (in failing to purchase TAE and assume its warranty obligations). Six months before insolvency, TAE's officers might have had a present intent to file for bankruptcy and seek voiding of warranties. But Diamond could not have had such certain

---

[4]While similar to the degree-not-kind distinction made in *Republic Bank*, this deception exception applies to different situations. Assume a seller has represented that you will get "high, low-risk returns" from investing in his apartment buildings. If the buildings do not exist, or they have been foreclosed, this statement could be considered a direct misrepresentation of an objective present fact, and there is no need for the exception. If instead the promise of returns is based on financials falsified by the seller, the statement is a prediction (albeit implausible), but is actionable because of the deception.

knowledge. And while Diamond did have certain knowledge about TAE's troubles, affirming the "reliability" of a company and its warranties is mild puffery, not an "obvious sham."

To the extent Diamond's representations were a sham, Morris still cannot recover because he neglected his own "duty to protect." *Flegles*, 289 S.W.3d at 549. While not experienced in the aircraft business, Morris was making a significant investment and spent months researching and negotiating. Such an individual is not relieved of his duty to perform due diligence on the manufacturers of the product. TAE's problems were not hidden; the most cursory search would have revealed the dropping stock price and two public investigations by German authorities. Even if Diamond's statements had been more direct i.e., "TAE is expected to honor its warranties" or "TAE's financial problems are not serious" Morris had some obligation to exercise his common sense and obtain confirmation of readily available, independently verifiable facts.

Because Morris did not make an affirmative misrepresentation at all, and in any case its statements were either generalized sales talk or future predictions, the district court properly dismissed Morris's fraudulent-misrepresentation claim.

**IV**

Ultimately, Morris's negligent-misrepresentation claims fail for the same reason as his fraudulent-misrepresentation claims: Diamond's statements do not mean what Morris reads into them, and they are non-actionable predictions and puffing. The district court, however, disposed of Morris's claim under the "economic loss" doctrine. For case-specific reasons, it is not clear whether the doctrine applies here. However, since we "may affirm on any grounds supported by the record

even if different from the reasons of the district court," the decision will be affirmed, as Morris failed to allege an actionable misrepresentation. *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (citation omitted).

## A

The economic-loss doctrine provides that solely economic losses to the product itself—as opposed to damage caused to persons or other property—cannot be recovered in a tort action, but must be recovered in contract, assuming such rights have not been negotiated away. The theory of the doctrine is that commercial controversies involving "insufficient product value" are best governed by contract and warranty law, since these bodies of law allow parties to allocate risk and ensure that both sides end up with the benefits and costs that they agreed to. *E. River S.S. Corp. v. Transam. Delaval, Inc.*, 476 U.S. 858, 872–73 (1986). The concern of tort law with safety is mitigated in this context, as losses cannot exceed the value of the product itself (and such losses can be insured). *Id*. at 871. The Kentucky Supreme Court expressly adopted the doctrine (it had been used implicitly before) in *Giddings & Lewis, Inc. v. Indus. Risk Ins.*, 348 S.W.3d 729 (Ky. 2011). Unlike in some jurisdictions, where the doctrine is limited to negligence and strict-liability claims, the Kentucky Supreme Court specifically extended it to negligent-misrepresentation claims.[5] *Id*. at 733. Morris argues, however, that the economic-loss doctrine should not apply in the absence of contractual privity.

---

[5]The court declined to answer whether the doctrine applied to fraud claims as well.

In standard articulations of the doctrine, contractual privity is not required. *See E. River S.S. Corp.*, 476 U.S. at 859 (charterers of ships suing manufacturer); 4A Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 2-715:237 (3d ed. 1997). Although the parties in *Giddings* were in contractual privity, the reasoning of the opinion would seem to support the position that economic losses in commercial transactions cannot be recovered in tort    whether there is privity or not. *See Giddings*, 348 S.W.3d at 737  39. The benefit of the bargain to the buyer includes not only the terms of the contract with the immediate seller, but the scope of the warranties and remedies against the manufacturer. Thus a purchaser will pay less if the manufacturer restricts its liability. *E. River S.S. Corp.*, 476 U.S. at 873. In this case, the aircraft Morris purchased includes an express warranty from Diamond that covers the frame of the aircraft, but not the engines. To the extent Morris's damages are covered by the terms of the warranty, Morris has a non-tort remedy; if Morris's damages are not covered, it is because the manufacturer had a right to restrict its liability. *See id.* at 873. Tort law should not intervene to upset the bargain settled upon by the parties.

This does not settle the issue, however. Morris argues that the economic-loss doctrine only applies to defective products, citing cases that did not apply the doctrine to service contracts. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575 (Ky. 2004); *Rodrock v. Gumz*, No. 4:11CV 00141 JHM, 2012 WL 1424501 (W.D. Ky. Apr. 24, 2012). But the policies that counsel against extending the doctrine to service contracts do not apply here. As stated in *Louisville Gas & Electric Co. v. Continental Field Sys., Inc.*, 420 F. Supp. 2d 764 (W.D. Ky. 2005):

> Virtually every classic description of the economic loss rule pertains to and often limits its application to the sale of products. The cases make this distinction in order

> to preserve the distinction between the remedies available under the U.C.C. [Uniform Commercial Code] and those available in tort. . . . In the context of selling a product, the economic loss rule can limit its application to those circumstances in which the damage is solely to the product. Where services are involved, the rule could not be so easily or clearly limited.

*Id.* at 769. This case involves the sale of a product, and that product contained a product feature whose value was not what was expected. It would not seem important that there is no physical defect; "[a]ny affirmation of fact or promise made by the seller to the buyer which *relates to the goods* and becomes part of the basis of the bargain creates an express warranty." Ky. Rev. Stat. § 355.2-313 (emphasis added).

It is less clear, however, whether Diamond's particular representation is within the sphere of Kentucky's Uniform Commercial Code, or instead relates to some "independent duty" covered by tort law. *See Presnell*, 134 S.W.3d at 589 90 (concurring opinion of Keller, J.) (noting that "a more accurate indicator of whether an action is appropriate in tort is the source of the duty upon which the tort claim is premised"). If Morris's claims were against a retail seller, who provided false information about the manufacturer warranties covering a product, he might have a viable breach-of-contract action. Thus a contractual partner's representations about warranties could theoretically be covered by the economic loss doctrine. Although not subject to breach-of-contract claims, manufacturers are exposed to warranty claims, which typically deal with the "character, nature or performance" of the product. *See Giddings*, 348 S.W.3d at 745; *see also E. River S.S.*, 476 U.S. at 872 ("The maintenance of product value and quality is precisely the purpose of express and implied warranties."). Of course manufacturers may limit their liability, but buyers will then likely benefit

from a lower price. This case, however, is more attenuated. A manufacturer "is not in the business of supplying information but rather the product itself and, only incidentally, information about the product." *Giddings*, 348 S.W.3d at 745. Diamond's allegedly negligent misrepresentations concerned the viability of TAE's warranties, not the characteristics of Diamond's or even TAE's product. There is no contract or warranty theory under which Morris could pursue these claims, and it would be a stretch to argue that part of the benefit of the bargain was Diamond's waiver of its duty of care with respect to such statements. Such a lack of remedy is only justifiable when it is negotiated away for a price.

Because it is not clear whether Kentucky courts would apply the economic-loss doctrine to this situation, we opt to resolve the issue on more straightforward grounds.

**B**

The tort of negligent misrepresentation is of recent vintage in Kentucky courts, which only explicitly adopted the tort in 2004, following the language of the Restatement (Second) of Torts § 552. *Presnell Constr. Managers, Inc.*, 134 S.W.3d at 580 81. Section 552 provides that:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1). Relying on comment b to § 552, the district court concluded that unlike fraudulent misrepresentation, this tort "is not limited to representations of

fact." This holding was in error, as it applies a standard inappropriate for cases involving the sale of goods.

The comment cited by the district court provides that the tort "applies not only to information given as to the existence of facts but also to an opinion given upon facts *equally well known to both the supplier and the recipient*." Restatement (Second) of Torts § 552 cmt. b (emphasis added). By contrast, in this case Morris alleges that the facts on which Diamond based its opinion were uniquely within Diamond's knowledge as a business partner of TAE. In addition, this section ordinarily applies to those paid for their advice    such as accountants or mechanics    and imposes a duty of care suitable to the supplier's business or profession. *See id.* cmt. e & illus. 3, 8.

The awkward fit of certain cases with the language of § 552 is a possibility that the Kentucky Supreme Court has recognized after *Presnell*: "Section 552 is poorly suited to a product sale." *Giddings*, 348 S.W.3d at 746. Instead, in product-sale cases, the court has called for application of a different section of the Restatement, which provides that:

> One engaged in the business of selling or otherwise distributing products who, in connection with the sale of a product, makes a fraudulent, negligent, or innocent misrepresentation of material fact concerning the product is subject to liability for harm to persons or property caused by the misrepresentation.

*Id*. at 746 n. 11 (quoting Restatement (Third) of Torts: Products Liability § 9). As this standard makes clear, the negligent- and fraudulent-misrepresentation torts are parallel, and both must relate to misrepresentations of "material fact." Thus "like the cause of action for fraud," "mere opinions and predictions" are not actionable under a negligent-misrepresentation theory. *Flegles, Inc.*, 289

S.W.3d at 553 54. Since we have already concluded that Morris failed to allege any affirmative misrepresentations of fact, his negligent-misrepresentation claim necessarily fails.

**V**

Unlike a fraudulent-misrepresentation claim, a fraudulent-concealment (fraud by omission) claim "is grounded in a duty to disclose." *Giddings*, 348 S.W.3d at 747. In particular, the plaintiff must show 1) "a duty to disclose the material fact at issue", 2) failure to disclose, 3) reliance, and 4) damages. *Ibid*. Morris does clearly articulate a fact that Diamond failed to disclose: TAE's financial problems. But he does not show that Diamond had a duty to disclose that fact.

Kentucky recognizes four situations that may create a duty to disclose: 1) fiduciary relationship; 2) statutory requirement; 3) "when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure"; and 4) "where one party to a contract has superior knowledge and is relied upon to disclose same." *Giddings*, 348 S.W.3d at 747 48 (quoting *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003) and *Smith v. General Motors Corp.*, 979 S.W.2d 127, 129 (Ky. Ct. App. 1998)). "When the first circumstance (a fiduciary duty) does not exist, the courts have been careful not to apply the other three circumstances so broadly as to transform everyday, arms-length business transactions into fiduciary relationships." *Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 772 (6th Cir. 2009). Morris does not claim that fiduciary or statutory duties apply. While he claims that the "superior knowledge" duty applies, he provides no argument for why we should disregard the plain language of *Giddings* that the defendant should be "party to [the] contract." *See also Faulkner Drilling Co.*

- 17 -

*v. Gross*, 943 S.W.2d 634, 638 (Ky. 1997) ("Where one *party to a contract* knows that the other relies on him to disclose all facts material to execution thereof, the duty rests on him not to conceal anything material to the bargain.") (emphasis added). Morris's citations to old Kentucky law are not convincing. *Graham v. John R. Watts & Son*, 36 S.W.2d 859, 860 62 (Ky. 1931); *Highland Motor Transfer Co. v. Heyburn Bldg. Co.*, 35 S.W.2d 521, 523 (Ky. 1931). *Graham* involved an affirmative misrepresentation, not concealment: the wholesaler distributed bags of seed labeled "alfalfa" when they contained sweet clover seed. *Highland Motor* did involve concealment the developer did not inform a subcontractor of a buried swimming pool on the property but it does not clarify the source of the duty to disclose, as it predated later refinement of Kentucky law on such duties. *See Clark v. Danek Med., Inc.*, 64 F. Supp. 2d 652 (W.D. Ky. 1999) ("Taken literally, [the language in *Highland Motor*] seems to allow recovery for any injury flowing from an original fraud."). *Highland Motor* does not mention "superior knowledge," and is characterized by *Giddings* as a "partial disclosure" case, which, as will be discussed below, does not require privity.

Unlike the "superior knowledge" duty, it appears likely the Kentucky courts would recognize a "partial disclosure" duty regardless of contractual privity. *Giddings* put no limitation on the partial-disclosure duty. One federal court has limited the duty to "a party in a transaction," *Mercy Health Partners-Lourdes, Inc. v. Hastings*, No. 5:05cv 109 R, 2006 WL 1867453, at *4 (W.D. Ky. June 29, 2006), but that would seem to include a manufacturer such as Diamond involved in the sale. Because partial disclosures are so similar to affirmative fraud, privity should not be required: "[C]ausing a false impression constitutes a palpable fraud, even though the statement is true as far

as it goes." *Dennis v. Thomson*, 43 S.W.2d 18, 23 (Ky. 1931). A non-contractual party does not have the duty to say anything, but once a partial disclosure is made he must "tell the whole truth." *Ibid*. To the extent that the district court held that a buyer-seller relationship is necessary to trigger a duty not to make misleading partial disclosures, this was erroneous.

The defendant's statement, however, must "create[] the impression of full disclosure." *Rivermont Inn.*, 113 S.W.3d at 641. Morris alleges that "Diamond disclosed information related to the TAE engine warranty . . . but failed to disclose the investigation of TAE and its financial problems." While Diamond's disclosure was partial, it did not create the impression of full disclosure. An inference of financial stability does not necessarily follow from making statements about the operational terms of a contract. *Cf. Buridi v. Branch Banking & Trust Co.*, No. 3:12 CV 00486 S, 2013 WL 1309763, at *4 (holding that loan commitment letter that "merely restated the construction loan details," but failed to disclose the change in scope of the construction project, did not create an impression of full disclosure). A financially troubled company is not required to volunteer its potential inability to pay simply because it makes statements about the high quality of its products and terms of its warranties. *But cf. Dennis*, 43 S.W.2d at 23 (finding failure to disclose, where prospectus described manufacturing capacity and potential contracts, but the corporation was insolvent, had no current manufacturing production, and no enforceable contracts with customers). A duty is even less warranted when the alleged partial disclosure is from a different entity, without proprietary access to internal financials. "[M]ere silence does not constitute fraud where it relates to facts open to common observation or discoverable by the exercise of ordinary

No. 12-6021
*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*

diligence." *Waldridge v. Homeservs. of Ky., Inc.*, 384 S.W.3d 165, 171 (Ky. Ct. App. 2011) (quoting *Bryant v. Troutman*, 287 S.W.2d 918, 920 21 (Ky. 1956)). With Morris unable to show that Diamond has an affirmative duty to disclose additional information, his partial-disclosure claim fails for reasons similar to those dooming the fraudulent-misrepresentation claim.

**VI**

Finally, Morris appeals the district court's denial of his motion to reconsider. Fed. R. Civ. P. 59(e). Although such motions are generally reviewed for abuse of discretion, where the denial is based on an erroneous legal doctrine, we review de novo. *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007).

To the extent Morris restates his legal arguments in the motion to reconsider, they have already been fully addressed and require no further discussion. Morris's new evidence    the email from Diamond's president excitedly discussing TAE's impending demise    does not change the foregoing analysis. Diamond's knowledge of TAE's financial troubles is not the key issue. Instead, the question is whether Diamond made any affirmative misstatements at all, and if so whether they were simply non-actionable predictions and opinions. The email continues to treat TAE's bankruptcy as a future possibility, not a present fact. In addition, the email was drafted in response to a collapse in TAE's share price    a publicly available fact that Morris had a duty to investigate. Finally, the district court's reference to the email being "sarcastic" was not a factual finding inappropriate at the motion-to-dismiss stage, but simply a recognition of the explanation provided

No. 12-6021
*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*

by Diamond's president.  The district court did not err in concluding that Morris continued to fail

to state a claim, despite consideration of the additional evidence.

## VII

For the foregoing reasons, the judgment of the district court is AFFIRMED.

No. 12-6021
*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*

**RALPH B. GUY, JR., Circuit Judge, dissenting.** Although I would affirm the dismissal of the negligent misrepresentation claim based on the district court's prediction that the Kentucky Supreme Court would apply the economic loss rule to bar such a claim, I would reverse the dismissal of the fraudulent misrepresentation and fraud by omission claims. I would find that, taking the more particularized factual allegations in the Second Amended Complaint as true and drawing all reasonable inferences in plaintiff's favor, it was error to conclude that plaintiff failed to state a claim for fraudulent misrepresentation or fraud by omission that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In my view, the misrepresentation claim ought not have floundered on the requirement that plaintiff have alleged a statement of past or present fact that is not merely a generalized subjective opinion or a prediction of future events. *Flegles, Inc. v. TrueServ. Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). I agree that the district court did not err in finding that representations regarding the *terms* of the TAE warranty, including its duration, were true and therefore not actionable. However, drawing all reasonable inferences in plaintiff's favor, I would find that plaintiff also alleged with particularity that defendant falsely represented the security of the TAE warranty while knowing  whether by virtue of its close relationship with TAE or having been contacted as part of the investigations by German authorities  that TAE had serious impending financial problems that put the viability of the warranty in jeopardy.

- 22 -

The materiality of TAE's warranty program was allegedly discussed in the negotiations because the new and untested diesel engines would require scheduled replacement of parts and early retirement of the engine that would make the DA42 prohibitively expensive to operate in the absence of TAE's warranty. At the sales meeting and demonstration in November 2007, Owen "went over many of the details regarding TAE, the engine, and its warranty . . . while continuing to tout the security provided by the warranty." Owen offered to sell a DA42 that suddenly became available in early 2008, which plaintiff purchased "[a]fter continued, insistent and sometimes angry pressure from Diamond and Mr. Owen." Two weeks later, TAE entered insolvency proceedings and the warranty was voided. The representations as to reliability and security may be construed as representations as to the strength of TAE and the security of the warranty at the time the statements were made. That this is a reasonable inference is also supported by the November 2007 email from defendant's president in which he appears to anticipate the imminent demise of TAE and the inability of TAE to honor its warranties. Whether the evidence would bear out the claim should have been a question left for another day.

Dismissal of the fraud-by-omission claim, on the other hand, rested entirely on the district court's determination that a duty to disclose based on either "superior knowledge" or "partial disclosure" would arise only between parties to the contract about which the fraud is claimed. I agree that privity is required for the superior-knowledge duty as it arises when

"'one party to a contract has superior knowledge and is relied upon to disclose the same.'"

*Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 748 (Ky. 2011) (citation omitted). I also agree with the majority's conclusion that the district court erred by requiring privity for a partial-disclosure duty to arise "'when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure.'" *Id*. at 747 (citation omitted). Rather than finding alternative grounds to affirm the dismissal, however, I would reverse on that basis and remand for further proceedings.