RENDERED: FEBRUARY 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1434-MR

C. WILLIAM HELM, MB.BCHIR                                 APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE A.C. MCKAY CHAUVIN, JUDGE
ACTION NO. 20-CI-001068

ALLISON RATTERMAN, PH.D.; ANGELA
KOSHEWA; PAMELA FELDHOFF, PH.D.;
AND ELEANOR LEDERER, M.D.                                 APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND McNEILL, JUDGES.

CETRULO, JUDGE: This is an appeal from Jefferson Circuit Court granting the

Appellees' motion for summary judgment. For reasons that will be set forth

herein, we affirm the judgment of the circuit court.

# FACTUAL AND PROCEDURAL HISTORY

Dr. C. William Helm ("Appellant Helm") was a professor, clinician, and researcher at the University of Louisville School of Medicine ("University") from 2000 to 2010. In February 2010, the University notified Appellant Helm that it would not renew his annual employment contract, which would expire at the end of July 2010. Shortly before that notification, in 2009, Dr. Douglas Taylor ("Complainant Taylor") accused Appellant Helm of research misconduct. Complainant Taylor, also a professor and researcher at the University, accused Appellant Helm of plagiarism. Complainant Taylor alleged that portions of his NIH[1] grant proposal were used in Appellant Helm's CEGIB[2] grant proposal. Complainant Taylor ultimately notified the University's Office of Research Integrity ("ORI") Director, Appellee Dr. Jennifer Ratterman ("Director Ratterman"), about the alleged plagiarism.

Director Ratterman testified in her November 2015 deposition ("Deposition") that at that time, when the University received such an allegation, it would determine whether the grant involved United States Public Health Service ("PHS") support or was "internal." The University closely monitored grants

---

[1] National Institutes of Health is an agency of the United States Public Health Service.

[2] Center on Environmental Genomics and Integrative Biology is a center on the University's campus that is funded through a National Institute of Environmental Health Sciences ("NIEHS") award. NIEHS is a NIH research center.

involving PHS support because 42 Code of Federal Regulations ("C.F.R.") Part 93 ("Part 93") outlines specific guidelines for addressing research misconduct allegations that utilize such funds. To ensure the University properly managed PHS supported grants and adhered to Part 93, the University created its ORI policy, which implemented the regulatory guidelines.[3]

Complainant Taylor first contacted Director Ratterman regarding the plagiarism allegation against Appellant Helm in mid-July 2009. Director Ratterman testified in her deposition that after that first meeting, she contacted the University's Office of Industry Contracts to get a copy of Appellant Helm's grant and begin reviewing the allegation. That office informed Director Ratterman that it did not have a copy of Appellant Helm's grant because the CEGIB grants were "internal," and it did not have paperwork on them. Based on that discussion, Director Ratterman decided that the University's ORI policy would not be used to review Appellant Helm's case and would instead be used as guidance (*i.e.*, incorporating some components of the policy while ignoring others).

Director Ratterman testified that the determination to use a review process separate from the University's ORI policy was based on her belief that Complainant Taylor's claims against Appellant Helm were outside the scope of

---

[3] The University was not required to use the ORI policy for allegations concerning grants that were not PHS supported (*i.e.*, what the University considered "internal" grants).

that policy (*i.e.*, "internal" and therefore not involving PHS support).  Director Ratterman understood Part 93 to apply only when the grant that incorporated the alleged plagiarism was PHS supported.[4]

Next, the University assigned an Associate Research Integrity Ombudsperson to oversee each allegation.  In August 2009, Director Ratterman met with Appellee Dr. Eleanor Lederer, the Associate Research Integrity Ombudsperson ("Ombud Lederer") assigned to Complainant Taylor's allegation.  Aside from that initial meeting and a few subsequent discussions concerning the creation of an inquiry panel to review the allegation, the case made little progress for nearly a year.

In September 2010, Director Ratterman became aware that CEGIB was NIH-funded (and therefore PHS supported), and she became concerned that Complainant Taylor's allegation may have met the scope of the University's ORI policy.[5]  That month, Director Ratterman met with her supervisor, Appellee Dr. Pamela Feldhoff, ("Supervisor Feldhoff") and University counsel, Appellee Angela Koshewa, ("Counsel Koshewa") to discuss those concerns.

---

[4] At the time, Ratterman did not realize that the University-based CEGIB was actually funded by NIH, making it PHS supported.

[5] Later, in a January 2016 letter, the federal ORI informed Ratterman that Part 93 applies when either the allegedly plagiarized grant or the grant incorporating the alleged plagiarism are PHS supported.  Therefore, Complainant Taylor's allegation fell under the ORI policy.

Then, in December 2010, Ombud Lederer sent a letter to Appellant Helm to notify him that there was an ORI investigation underway. The letter informed Appellant Helm that a complaint had been submitted to the University's Research Integrity Program and involved an allegation of plagiarism in his CEGIB grant. The letter further informed Appellant Helm that a panel of University professors had been selected to conduct an inquiry on the matter and to make a recommendation as to whether a full investigation was warranted. The letter notified Appellant Helm that the panel members may reach out to him for additional information and welcomed him to send supporting documentation, as he felt necessary. Lastly, the letter welcomed Appellant Helm to contact Ombud Lederer if he had any questions.

The inquiry panel met and determined that the allegation warranted further investigation. Shortly thereafter, an investigation committee was formed. In April 2011, Ombud Lederer sent a second letter to Appellant Helm to request his curriculum vitae for the investigation committee to review. The next month, the committee interviewed Appellant Helm and three months after that, in August 2011, the University exonerated Appellant Helm of Complainant Taylor's plagiarism allegation.

In the years that followed, Appellant Helm filed multiple federal and state lawsuits, a University faculty grievance, a Board of Claims action, and an

Equal Employment Opportunity Commission ("EEOC") charge against the University and/or various University employees concerning the events of 2009-2011. *See Helm v. Eells*, 642 F. App'x 558 (6th Cir. 2016); *Helm v. Ratterman*, 778 F. App'x 359 (6th Cir. 2019); *Helm v. Cook and Parker*, Jefferson Cir. Ct., Civil Action No. 10-CI-05997 (filed Aug 25. 2010); *Helm v. Univ. of Louisville*, Jefferson Cir. Ct., Civil Action No. 15-CI-001410 (filed Mar. 25, 2015); *Helm v. Univ. of Louisville*, EEOC Charge No. 474-2010-00803; and *Helm v. Univ. of Louisville*, Board of Claims Claim No. BC-2010-00640.

In the most recent case, *Helm v. Ratterman*, 778 F. App'x 359, Appellant Helm claimed, in relevant part, that he had a viable fraud by omission claim against the Appellees because the parties had a fiduciary relationship that created a duty to disclose the University's failure to use its ORI policy. The United States Sixth Circuit Court of Appeals ("Sixth Circuit") disagreed and found the parties did not have a fiduciary relationship, but concluded that the United States District Court for the Western District of Kentucky ("District Court") could analyze the remaining theories to support Appellant Helm's fraud by omission claim on remand. Further, the Sixth Circuit found that if Appellant Helm could successfully develop the fraud by omission claim under one of the other theories, Kentucky's equitable tolling statute may save his remaining state law claims from being untimely. Although the Sixth Circuit remanded for further proceedings in

-6-

the District Court, the District Court decided not to exercise its supplemental jurisdiction over the state law claims and declined to address the Sixth Circuit's remaining questions.

Appellant Helm then filed those remaining claims in Jefferson Circuit Court in the present action. Appellant Helm argued that his fraud by omission claim was viable because the Appellees had a duty to disclose based on each of the remaining theories: (1) statutory; (2) partial disclosure; and (3) "superior knowledge" in a contract. Appellant Helm then argued that because he had a viable fraud by omission claim, Kentucky's equitable tolling statute applied and his state law tort claims were timely.[6] The Appellees disagreed and filed a motion to dismiss Appellant Helm's claims, which the court treated as one for summary judgment and disposed of it under Kentucky Rules of Civil Procedure ("CR") 56.

As to Appellant Helm's fraud by omission claim, the circuit court held that none of the theories were valid: (1) there were no statutes imposing any duty on the Appellees; (2) Ombud Lederer's letters to Appellant Helm were not partial disclosures that created an impression of full disclosure; and (3) there was no record of a contract between Appellant Helm and the individual Appellees. Further, because the circuit court found no viable fraud by omission claim, it

---

[6] Helm's tort claims have five-year statutes of limitations.

concluded Kentucky's equitable tolling statute did not apply and the tortious

interference claims were time-barred.  We agree with the circuit court.

## STANDARD OF REVIEW

> An appellate court's role in reviewing a summary
> judgment is to determine whether the trial court erred in
> finding no genuine issue of material fact exists and the
> moving party was entitled to judgment as a matter of law.
> *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A
> grant of summary judgment is reviewed *de novo* because
> factual findings are not at issue.  *Pinkston v. Audubon
> Area Community Services, Inc.*, 210 S.W.3d 188, 189
> (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d
> 698, 700 (Ky. App. 2000)).

*Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018).

Further, we must view the record in "a light most favorable to the

party opposing the motion for summary judgment and all doubts are to be resolved

in his favor."  *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480

(Ky. 1991).

## ANALYSIS

First, Appellant Helm argues that he has a viable fraud by omission

claim against the Appellees, which, if proven, would constitute an act of

concealment.  Next, Appellant Helm argues that because of that alleged act of

concealment, Kentucky's equitable tolling statute should apply, and his tort claims

should no longer be barred by the applicable statutes of limitations.  We will first

address Appellant Helm's fraud by omission claim because the remainder of his

-8-

claims depend on its viability. We will then turn to the applicability – or lack thereof – of Kentucky's equitable tolling statute and the remaining tort claims.

### A.    Fraud by Omission

The Kentucky Supreme Court laid out the requirements for a fraud by omission claim in *Giddings and Lewis, Inc. v. Industrial Risk Insurers*: "To prevail, a plaintiff must prove: (1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." 348 S.W.3d 729, 747 (Ky. 2011) (citation omitted). Therefore, the claim is "grounded in a duty to disclose." *Id.* (citing *Republic Bank & Trust Co. v. Bear, Stearns & Co. Inc.*, 707 F. Supp. 2d 702, 710 (W.D. Ky. 2010) ("The gravamen of the tort is breach of a duty to disclose . . . .")). Whether there is a duty to disclose is a matter of law for the court. *See Smith v. General Motors Corp.*, 979 S.W.2d 127, 129 (Ky. App. 1998). *See also* RESTATEMENT (SECOND) OF TORTS § 551 cmt. m (1977) ("Whether there is a duty to the other to disclose the fact in question is always a matter for the determination of the court.").

In Kentucky, there are four circumstances in which a duty to disclose may arise: (1) where "provided by statute," (2) "when a defendant has partially disclosed material facts to the plaintiff but created the impression of full

disclosure," (3) "where one party to a contract has superior knowledge and is relied upon to disclose the same," and (4) "from a confidential or fiduciary relationship[.]" *Giddings*, 348 S.W.3d at 747-48. We will discuss circumstances 1-3,[7] in turn.[8]

### 1) Statute did not provide a duty to disclose

Appellant Helm first argues the Appellees had a statutory duty to disclose that they planned to use a research misconduct policy other than the University's written ORI policy. Appellant Helm bases his claim on 42 United States Code ("U.S.C.") 289b; more specifically, on the guidelines of its corresponding regulation, Part 93.

An extensive search of Kentucky case law provides no example in which a Kentucky state court found a state law duty to disclose based upon a federal statute, much less a federal *regulation*. Appellant Helm provides no examples of his own. Instead, Kentucky case law references only Kentucky statutes when determining whether there is a statutory duty to disclose. *See Keeton*

---

[7] Appellant Helm does not raise circumstance 4 because the Sixth Circuit rendered a thorough analysis explaining why the relationship between Appellant Helm and the Appellees is not fiduciary in nature. *Helm v. Ratterman*, 778 F. App'x at 374.

[8] Appellees argue that Appellant Helm properly raised only circumstance 2 in the circuit court and this Court should not address circumstances 1 and 3; however, the circuit court rendered findings for circumstances 1, 2, and 3, so we have authority to (and will) review each. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (citation omitted).

*v. Lexington Truck Sales, Inc.*, 275 S.W.3d 723 (Ky. App. 2008); *Smith*, 979

S.W.2d 127; *Bear, Inc. v. Smith*, 303 S.W.3d 137 (Ky. App. 2010).

Nevertheless, it is clear neither the federal statute nor the regulation

provides a duty for the Appellees to disclose to Appellant Helm that they did not

use the University's ORI policy. 42 U.S.C. § 289b simply establishes that

institutions that receive PHS support shall have an administrative process to review

research misconduct claims involving such funds:

> the [PHS] Secretary shall by regulation require that each
> entity that applies for financial assistance under [Chapter
> 6A – Public Health Service] . . . submit . . . (1)
> assurances . . . that such entity has established and has in
> effect (in accordance with regulations which the
> Secretary shall prescribe) an administrative process to
> review reports of research misconduct . . . (2) an
> agreement that the entity will report to the [federal ORI]
> Director any investigation of alleged research misconduct
> in connection with projects for which funds have been
> made available under this chapter that appears
> substantial; and (3) an agreement that the entity will
> comply with regulations issued under this section.

42 U.S.C. § 289b(b).

The statute goes no further to describe what such an "administrative

process" must entail, and it does not discuss a "duty to disclose" to respondents

when such process is not used. *Id.* In fact, the statute does not discuss any specific

requirements of such an administrative process. *Id.* Instead, the corresponding

-11-

federal regulation, Part 93, sheds light on what is required of universities. 42 C.F.R. 93.304(b).[9]

Although this regulation details what an institution's policies must include (*e.g.*, notice and confidentiality requirements), it does not discuss a duty to disclose when an institution does not use the policy. *Id.* The only affirmative duty listed in Part 93 is a duty to protect PHS funds from misuse: "Institutions and institutional members have an affirmative duty to protect PHS funds from misuse by ensuring the integrity of all PHS supported work, and primary responsibility for responding to and reporting allegations of research misconduct, as provided in this part." 42 C.F.R. § 93.100(b). *See also Helm*, 778 F. App'x at 374 ("42 C.F.R. § 93.100(b) . . . show[s] that [Appellees'] duties under the policy ran to several different persons and institutions; thus, [Appellant] Helm has not adequately shown that [Appellees'], through the ORI policy, promised to act primarily for his benefit . . . .").

Further, the regulation lists no duties that an institution owes to a respondent in a misconduct allegation; and certainly, none that relate to the institution's failure to use such administrative process altogether. Instead, the regulation states that when a respondent to a misconduct allegation argues an institution violated the regulations during an inquiry, the federal ORI may review

---

[9] The University met these requirements when it implemented its ORI policy.

the misconduct proceedings. 42 C.F.R. § 93.403(c). Here, the federal ORI did just that. Appellant Helm contacted the federal ORI and claimed the University violated the regulations. So, in 2015, the federal ORI conducted its own review of Complainant Taylor's allegation, concurred with the University's determination, and administratively closed the case without further action.[10]

Part 93 further lists actions the U.S. Department of Health and Human Services ("HHS")[11] may take to address an institution's noncompliance, none of which reference a duty owed to a respondent.[12] 42 C.F.R. § 93.412. Again, all duties in the regulation are owed to PHS (or, as an extension, HHS). The guidance of the regulations is clear: where there is noncompliance with the misconduct allegation regulations, the institutions owe all duties to HHS. 42 C.F.R. § 93.413.

Even if Kentucky precedence suggested a federal statute and regulation could create a statutory duty to disclose, those that Appellant Helm bases his argument on do not create such a duty on the University or its actors.

---

[10] The federal ORI did clarify, however, that contrary to Director Ratterman's understanding of the regulation, Complainant Taylor's 2009 allegation against Appellant Helm did fall under its jurisdiction.

[11] HHS is the Department that oversees PHS.

[12] Noncompliance actions include: (1) issue a letter of reprimand; (2) direct that research misconduct proceedings be handled by HHS; (3) place the institution on special review status; (4) place information on the institutional noncompliance on the ORI website; (5) require the institution to take corrective actions; (6) require the institution to adopt and implement an institutional integrity agreement; (7) recommend that HHS debar or suspend the entity; (8) any other action appropriate to the circumstances. 42 C.F.R. § 93.413(c).

## 2) Partial disclosure did not create impression of full disclosure

Next, Appellant Helm argues the two letters Ombud Lederer sent to him – dated December 6, 2010 and April 20, 2011 – created a duty to disclose because both letters referenced the research misconduct allegation, but neither one mentioned the decision to use a policy other than the University's ORI policy. To find that a duty to disclose arose from those letters, each must have created the impression of full disclosure. *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 568 (6th Cir. 2013). This Court has further elaborated that "[m]ere silence does not constitute fraud [by omission] where it relates to facts open to common observation *or discoverable by the exercise of ordinary diligence*, or where means of information are as accessible to one party as to the other." *Giddings*, 348 S.W.3d at 749 (emphasis added) (quoting *Bryant v. Troutman*, 287 S.W.2d 918, 920-21 (Ky. 1956)).

Here, as the Appellees correctly point out, the first letter made no mention of what policy, if any, the University would use in the inquiry. It simply notified Appellant Helm that someone made a plagiarism allegation against him, an inquiry panel had been formed to review the allegation, and there could be a forthcoming investigation. Ombud Lederer then invited Appellant Helm to contact her with any questions. That one-page letter did not serve, and would not reasonably have been construed, as an all-encompassing outline of the allegation or

-14-

the procedures which would be employed to address it. Further, the policy used would have been "discoverable by the exercise of ordinary diligence" (*e.g.*, by taking Ombud Lederer up on her invitation to reach out with questions). The second letter clearly had one purpose: to request a copy of Helm's curriculum vitae. Appellant Helm, in his brief, fails to explain how either of Ombud Lederer's letters created an impression of full disclosure and therefore he does not establish a duty to disclose.

### 3)     A party to a contract did not have "Superior Knowledge"

Lastly, Appellant Helm claims the Appellees had superior knowledge of the fact that they did not use the University's ORI Policy and therefore owed him a duty to disclose such fact. However, Appellant Helm fails to successfully argue that there was a contract between him and the Appellees (neither individually nor as a group). The Sixth Circuit, in analyzing Kentucky case law, recognized that the "superior knowledge" duty requires contractual privity. *Morris Aviation*, 536 F. App'x at 568-69 ("Unlike the 'superior knowledge' duty, it appears likely the Kentucky courts would recognize a 'partial disclosure' duty regardless of contractual privity.").

Appellant Helm claims the joint expectation that all University personnel adhere to the Code of Conduct, ORI policy, and The Redbook[13] created

---

[13] The Redbook is an internal policy that governs employees' annual employment contracts.

a "contract" between all parties. However, Kentucky law is clear that a contract exists only where there is "offer and acceptance, full and complete terms, and consideration." *Energy Homes, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (quoting *Commonwealth v. Morseman*, 379 S.W.3d 144, 149 (Ky. 2012)). As the Appellees correctly point out, the generally applicable policies that the University outlines in its employment contracts do not create a binding contract between all employees and administrative officials of the University. Generalized references to a communal effort to conduct oneself with integrity and professionalism do not meet the necessary elements of a contract.

It is evident from Appellant Helm's annual contracts with the University that neither Director Ratterman, Ombud Lederer, Supervisor Feldhoff, nor Counsel Koshewa are parties to the contracts. Appellant Helm has failed to provide evidence that suggests otherwise. Because there is no contractual privity between any of the parties, "superior knowledge" in a contract could not have created a duty to disclose.

Therefore, Appellant Helm has failed to provide any viable argument that the Appellees had a duty to disclose which policy they intended to use in the research misconduct allegation. Consequently, Appellant Helm's fraud by omission claim is not viable as a matter of law.

**B.      Equitable Tolling**

As discussed, if Appellant Helm could not establish a viable fraud by omission claim, there would be no act of concealment to trigger Kentucky's equitable tolling statute.  Further, if the equitable tolling statute did not apply, the remainder of Appellant Helm's claims would be time-barred.  Here, Appellant Helm did not establish a duty to disclose and therefore did not successfully argue that there was an act of concealment.  Consequently, Kentucky's equitable tolling statute does not apply, and the remaining tort claims are time-barred.  Appellant Helm raised both a tortious interference with contract claim and a tortious interference with prospective business advantage claim.

A tortious interference with contract claim requires Appellant Helm to show:  "(1) the existence of a contract; (2) [Appellees'] knowledge of the contract; (3) that [Appellees] intended to cause a breach of that contract; (4) that [Appellees'] actions did indeed cause a breach; (5) that damages resulted to [Appellant Helm]; and (6) that [Appellees] had no privilege or justification to excuse its conduct."  *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5-6 (Ky. App. 2012) (citing *Ventas, Inc. v. Health Care Property Investors, Inc.*, 635 F. Supp. 2d 612, 619 (W.D. Ky. 2009)).

Tortious interference with prospective business advantage, on the other hand, does not require the existence of a contract.  Instead, for this claim,

Appellant Helm "must prove:  (1) the existence of a valid business relationship or expectancy; (2) that [Appellees were] aware of this relationship or expectancy; (3) that [Appellees] intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages."  *Id.* at 6 (citing *Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.*, 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003)).  As *Snow Pallet* details, this analysis "turns primarily on motive."  *Id.* (citing *Nat'l Collegiate Athletic Ass'n By and Through Bellarmine Coll. v. Hornung,* 754 S.W.2d 855, 859 (Ky. 1988)).  "To prevail under this theory of liability, the party seeking recovery must show malice or some significantly wrongful conduct."  *Id.* (internal quotation marks omitted).

However, as discussed, both tort claims have a five-year statute of limitations.  KRS[14] 413.120(6).  As the events surrounding these claims took place a decade or so ago, the statutes of limitations have run, and the claims are time-barred.  Appellant Helm argues that Kentucky's equitable tolling statute applies and therefore makes the tort claims timely.  The circuit court correctly explains the equitable tolling issue in its order and opinion filed October 12, 2020:

> [A] cause of action is equitably tolled against a person who, by absconding or concealing himself or any indirect means, obstructs the prosecution of the action.  KRS 413.190(2).

---

[14] Kentucky Revised Statute.

For equitable tolling to apply to [Appellant] Helm's claims based on fraudulent concealment, mere silence is insufficient; the [Appellees] must have engaged in some act or conduct which mislead or deceived [Appellant] Helm and obstructed or prevented him from instituting the suit in a statutorily timely manner. *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 573 (Ky. 2009).

Specifically, Appellant Helm must show "some act or conduct which in point of fact misleads or deceives [him] and obstructs or prevents him from instituting his suit while he may do so." *Helm v. Eells*, 642 F. App'x at 563 (quoting *Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914 (Ky. 1992)). *See also Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. 1952) ("the representation, or act, intentional or otherwise, must hav[e] been calculated to mislead or deceive and to induce inaction by the injured party.").

Here, Appellant Helm attempted to establish a viable fraud by omission claim, which could have constituted "some act or conduct . . . which [misled] or deceive[d]" and "prevent[ed] him from instituting his suit while he may do so." *Id.* at 792. However, as thoroughly detailed, Appellant Helm's attempt falls short. He does not show that there was a duty to disclose and therefore does not establish an act of concealment or deception. Accordingly, Appellant Helm did not establish an act or conduct that prevented him from instituting his tortious interference claims within the five-year statute of limitations.

The circuit court correctly concluded there is no evidence which would allow the court to find it possible for Appellant Helm to prevail at trial on its claims, even when viewing that evidence in the light most favorable to Appellant Helm and considering all allegations he raised to be true.

## CONCLUSION

For these reasons, this Court finds Appellant Helm did not present a viable fraud by omission claim as a matter of law; therefore, Kentucky's equitable tolling statute does not apply, and the remaining tortious interference claims are time-barred. The circuit court's order granting the Appellee's motion for summary judgment is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Michael W. Oyler
Louisville, Kentucky

BRIEF FOR APPELLEES:

Craig C. Dilger
Amy L. Miles
Chadler M. Hardin
Louisville, Kentucky

-20-